1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF MISSOURI

3

4

5   CHARLES LEE THORNTON,

            Plaintiff,
6
            vs.                              No.  4:07-CV-79 CDP
7
    City of KIRKWOOD,
8
            Defendant.
9
    — — — — — — — — — — — — — — — — — — — — — — — — — — —
10
    PRESENT:    The Honorable Catherine D. Perry, Presiding
11
    ATTORNEY FOR PLAINTIFF:   Plaintiff appears pro se
12
    ATTORNEYS FOR DEFENDANT:   John M Hessel and Jani L. Boyles
13

14

15

16

17

18                  Rule 16 Conference

19                   March 30, 2007

20

21

22

23              TERI HANOLD HOPWOOD
                Registered Merit Reporter
24         Thomas F. Eagleton Courthouse
               111 South Tenth Street
25         St. Louis, Missouri  63102

1          THE COURT:   Good morning.   We are here in the case

2    of Charles Lee Thornton versus the City of Kirkwood, case

3    number 4:07-CV-79, and Mr. Thornton is here appearing pro se,

4    and representing himself, and the Government -- I mean the

5    defendant is here and it's Mr. Hessel and Ms. Boyles

6    representing the City of Kirkwood.

7          Mr. Thornton, why don't you step up to the lectern and

8    let's go over a couple of things.   One, I'd like to talk about

9    your motion for leave to amend your complaint, and then talk

10   to you about the joint proposed scheduling plan that you

11   submitted, but first I'd like to hear from you, anything you'd

12   like to say in response to the -- you filed your motion to

13   amend, and the defendant filed an opposition to that, and

14   rather than waiting for further briefing, do you wish to make

15   any further statements about your motion to amend and why you

16   think you should be able to do that?

17          MR. THORNTON:   Yes, Your Honor.   I wasn't aware

18   that the defendant had filed their -- I guess their response,

19   but in reference to me filing, the --

20          THE COURT:   Wait a minute.   They filed it on the

21   26th, and I'm sure they mailed it to you.

22          MR. HESSEL:   We did, Your Honor.

23          THE COURT:   At your address 351 Attucks Street.   Do

24   you read your mail?

25          MR. THORNTON:   Yes, Your Honor.

1          THE COURT:   You're saying you never got this in the

2     mail?

3          MR. THORNTON:   What I got was a letter and

4     information stating that they have not filed it yet, and

5     therefore I was waiting for them to file it, is the letter

6     that I received.   So -- and it also stated that it may be an

7     example of what would be filed, so I have no idea exactly what

8     would be filed because the letter that came before the

9     documentation stated that it had not been filed, so I was

10    unaware of any filings.

11         THE COURT:   Mr. Hessel, tell me, or whichever

12    counsel wishes to speak, tell me what you did send to the

13    plaintiff because I think I know what he's talking about based

14    on my reading of your brief.

15         MR. HESSEL:   I'll be happy to, Judge.   We sent to

16    him a letter pursuant to Rule 11, together with a motion for

17    Rule 11 sanctions, with a memorandum in support of the motion

18    for Rule 11 sanctions.   In addition to that, we sent to him

19    the memorandum in opposition to his motion for leave to file

20    the amended complaint.   That was all in one package.

21         THE COURT:   In one letter, one envelope?

22         MR. HESSEL:   Correct.

23         THE COURT:   Okay, Mr. Thornton, come back.   So in

24    that document, in other words, there was a letter that said

25    here is a motion for sanctions if you don't withdraw your

1     motion to amend, and then here is also the memorandum in

2     opposition to your motion to amend.

3               MR. THORNTON:  Correct.

4               THE COURT:  So they did, you did get it all.

5               MR. THORNTON:  I got it all, but I was under the

6     illusion, because it stated that it would not be filed for 21

7     days, that it would not be on record, and therefore, I

8     wouldn't have to respond to it until it was filed, but if

9     you're saying it's filed, I did read it, so I'm aware of it.

10    I had no idea it was filed based on their letter stating that

11    it had not been filed.

12             THE COURT:  There is two different things.  What

13    they filed, the only thing they have actually filed in the

14    court file is a memorandum opposing your motion to amend.  The

15    other thing that they sent you that said they weren't going to

16    file it yet was a proposed Motion for Sanctions, and under the

17    rule, they have to send that to you first to give you a chance

18    to change your mind and withdraw your motion for leave to

19    amend, and so they have given you that chance.  Do you wish to

20    change your mind and withdraw your motion for leave to amend?

21             MR. THORNTON:  No, Your Honor.

22             THE COURT:  Then tell me why you think you should

23    be able to bring all these charges, and add these other

24    defendants at this point.

25             MR. THORNTON:  Well, they were in on my original

1    filing, but the mistake on my part was that it was not

2    written.  Now, I did not remove the "et al" from my

3    documentation, the clerk did, and had I known at that time all

4    I needed to do was add the individual defendants instead of

5    stating the City of Kirkwood, et al, unfortunately I was

6    explained later that the "et al" was like a nicety and allowed

7    instead of writing them all the time, only writing "et al."

8          THE COURT:  But you didn't say anything about them

9    in your complaint.  I've got it right here in front of me, and

10   all it says is you say defendants, plural, City of Kirkwood,

11   and you don't say anything about any other defendants, so even

12   though you've got "et al" in the heading, there is nothing in

13   your complaint that talks about and names all these other

14   people, so how can you say they were in here originally?

15         MR. THORNTON:  Because in my understanding of why I

16   wrote, "the City of Kirkwood, et al," the City of Kirkwood is

17   those individuals, it is the Mayor.  The City of Kirkwood did

18   not stop me, in my opinion, deny me the right to speak.  It

19   was the Mayor and the City Council, and the City itself did

20   not arrest me, the Police Department did, under the authority

21   of the Chief of Police, and then the City Administrator, all

22   of them that were, as far as representing the City of

23   Kirkwood, made that decision, and my mistakenly not writing it

24   on the paper, and the clerk's choice to remove the "et al"

25   before the filing was the mistake.  But my intention, and even

1    on the documentation it states the "et al," which I mistakenly

2    did not write the City of Kirkwood and then individually list

3    all the individuals, along with Attorney Hessel, who in my

4    opinion did conspire to stop me from speaking.

5            THE COURT: Okay. Well, your original -- the thing

6    you filed here, we need to know what your case is here that

7    we're talking about, and in the case that you filed, the

8    original complaint, you alleged that on May 18th of 2006, and

9    June 15th of 2006, that you were -- your First Amendment

10   rights were violated because you were not allowed to speak at

11   the meeting. Are you trying to in your proposed amended

12   complaint -- it's a little hard to figure out what you're

13   saying, but you seem to be saying that -- wanting to go back

14   all the way to 2001, or even farther, I'm not sure, and you

15   want to name a whole bunch of other people, and so it's not

16   just adding parties, you're also aiding claims, correct?

17           MR. THORNTON: The parties itself would be on the

18   first part, them denying me to speak. The second part would

19   be adding the claim, yes, Your Honor.

20           THE COURT: That's not what your amended complaint

21   says. So what is it -- tell me what the new complaint is that

22   you're trying to bring.

23           MR. THORNTON: The new complaint is the issue with

24   the City of Kirkwood, which I have proven as far as document

25   fraud in speaking with them at the City Council meeting, one

1    attempt of them denying me to speak, because I believe they

2    are tired of hearing me speak the truth of documentation, and

3    with the filing of the other court issues, and denying to

4    settle with me, or with relationship to their issues of the

5    City of Kirkwood's actions.

6              THE COURT:   Well, what is it you think you're suing

7    for?  What do you think was done wrong to you and what are you

8    trying to get?

9              MR. THORNTON:   Okay.  I believe the first issue

10   with the City of Kirkwood, Mayor, City Council, Attorney

11   Hessel being the City Attorney, and the Chief of Police, I

12   believe I was wronged with them denying my First Amendment

13   right to free speech.

14             THE COURT:   When did this happen?

15             MR. THORNTON:   The two dates --

16             THE COURT:   May 18th and June 16th of 2006?

17             MR. THORNTON:   Those two occasions, correct.

18             THE COURT:   Okay.

19             MR. THORNTON:   And the other count was constantly

20   trying to get them to acknowledge the wrong, and now just

21   filing in the court to try to be heard to correct the wrong

22   that was I believe not corrected in the lower court.

23             THE COURT:   Explain that.  I have no idea what you

24   just said or what that means.

25             MR. THORNTON:   I filed in the lower court, and I

1    was denied, and now I'm filing in the federal.

2          THE COURT:  I'm not an Appellate Court.  This is

3    not the Court of Appeals.  The Federal Court does not rule on

4    whether the state courts or municipal courts did the right

5    thing.  There is no jurisdiction to do that.  Do you

6    understand that?

7          MR. THORNTON:  Yes, I thought I had, I thought my

8    federal question was with the lower court.  Well, I still

9    understand as far as what you're saying you're not an

10    appellate court for them

11          THE COURT:  There is no tort called refusal to

12    settle.  There is no -- you can't sue somebody for not

13    settling a case.  It simply is not a cause of action, so I'm

14    going to deny your motion for leave to amend.  I think that it

15    is on its face frivolous legally, and I think it is just

16    improper for a whole bunch of reasons.  There is no legal

17    basis for it whatsoever, in terms of adding these claims.

18    You admit that it has been -- the issues going back

19    into the prior time have been litigated in the state courts,

20    and you know, you have remedies in the state courts if you

21    think that they did something wrong there, there is appeals

22    and things like that, but this Federal Court is not a Court of

23    Appeals, so we're going to proceed on your original complaint

24    which seeks to recover injunctive relief from the City of

25    Kirkwood to allow you to speak, right?  That's what you're

1      asking for in the original complaint?

2              MR. THORNTON:  Yes, that's the original complaint.

3      I'm also denied it as far as adding them to the original

4      complaint, the individuals?

5              THE COURT:  You have to make some allegations

6      against the individuals, and you haven't done that.  You have

7      to show that they individually did something in violation of

8      your constitutional rights, and you're saying that it was the

9      whole city who did it, right?

10             MR. THORNTON:  Well, that's where the problem is

11     because I said the City and I did not write the individuals.

12     The City itself didn't.

13             THE COURT:  Tell me what each of these people did

14     to you that you think violates your constitutional rights.

15             MR. THORNTON:  The Mayor and the City Council did

16     discuss banning me from speaking after I was stopped from

17     speaking at the City Council meetings, along with Attorney

18     Hessel, and therefore, that's why they are together as far as

19     under the umbrella of the City of Kirkwood, but the

20     individuals made the statements in reference to banning me

21     from speaking with Attorney Hessel stating that it can be

22     done.

23             THE COURT:  Okay.  Mr. Hessel, let me hear your

24     response on this issue of whether he should be able to join

25     the individuals on the limited claims he has brought in the

1    original complaint.

2        MR. HESSEL:   Thank you, Your Honor.   I appreciate

3    the Court trying to get clarity as to what Mr. Thornton has

4    been trying to allege.   Let's talk about the plaintiff needs

5    to show a causal link of the deprivation of his rights by

6    asserting factual allegations against the individual

7    defendants.   You just heard him say that there was a

8    discussion among the City Council members and the Mayor with

9    myself about whether or not he could be banned from Council

10   meetings because of his disruptive behavior.   The result of

11   that discussion was that I advised the City Council that they

12   could not ban him from Council meetings, that they had to

13   allow him to appear, to attend, and to speak, and to the

14   extent that he became disruptive, then we had to take action

15   on an individual basis.   That's the extent of the conversation

16   relating to the banning.   That took place at a public meeting

17       THE COURT:   And Mr. Thornton was there, he heard

18   the discussion?

19       MR. HESSEL:   I believe he was, but I'm not certain

20   of that.   We also discussed it in executive session, and I

21   don't recall whether he was there at that secondary meeting.

22   My memory, Judge, and I'm doing this from memory, so I

23   apologize if my memory is inaccurate, my recollection is that

24   on June 15th there was a discussion about banning

25   Mr. Thornton.   I don't believe that Mr. Thornton was present

1   during that discussion because he had already been taken out

2   of the Council meeting because he was being disorderly.

3           THE COURT:   Tell me if we limit this to May 18th,

4   2006, and June 15th, 2006, why shouldn't he be able to add the

5   individuals who ordered him removed on those two dates as

6   individual defendants in the case?

7           MR. HESSEL:   The only individual that directed

8   Mr. Thornton to take a seat was the Mayor, who presides over

9   the meeting.   The Mayor advised Mr. Thornton on at least two

10  occasions, both on May 15th -- May 18th and June 15th, that

11  the manner in which he was speaking and the subject matter

12  upon which he was speaking was inappropriate.

13          Addressing them individually, on the first meeting, May

14  the 18th, that was when there was a public hearing, I don't

15  recall candidly who the presenter was, but it was a

16  multi-million dollar project to improve one of the nursing

17  homes in the City of Kirkwood, and Mr. Thornton's comments to

18  the applicant, to the developer was whether or not they

19  understand that the City of Kirkwood has a slave mentality, or

20  words to that effect.   The Mayor asked him on at least two

21  occasions, "Do you have any relevant questions concerning this

22  proposal," and when he finally acknowledged that he didn't,

23  the Mayor said, "Have a seat," and Mr. Thornton sat down in

24  the Council chamber and refused to take a seat.   That's why he

25  was taken out, and that has been adjudicated, and he was found

1    guilty of disorderly conduct at that municipal level, as well

2    as the Associate Circuit Court as to both of those occasions,

3    May 18th and June 15th.

4          Subsequent to that, and I'm doing this from memory, I

5    believe it was subsequent to June 15th, but it may have been

6    intervening, I just don't recall the timing of it, but clearly

7    there was a discussion about whether or not the City Council

8    could ban him from the meetings, prohibit him as a blanket ban

9    from speaking at any other meetings, or taking any other

10   action against him to try to control the disorderly conduct

11   that he was engaging in, and the answer was you cannot ban

12   him, he has a First Amendment right, you cannot ban him from

13   attending nor ban him from speaking, and the ultimate decision

14   has been to adopt rules and procedures to in essence

15   memorialize rules and procedures that have been in existence

16   close to 30 years that I've been representing the City.

17   That's the extent of it, and my problem with his motion to

18   amend to add additional parties is that as you know, Judge,

19   there's no factual allegations whatsoever against these

20   individual defendants.

21          For example, Chief Plumber.  Chief Plumber was not even

22   present at either one of these meetings, so there is no basis

23   whatsoever to allege that Chief Plumber somehow was involved

24   in prohibiting him from speaking.  As the Chief of Police,

25   were his officers involved in escorting him out of the Council

1    chambers, literally dragging him out of the Council chambers?

2    The answer to that question is of course yes, and that's

3    because he was engaged in disorderly conduct for which he has

4    been found guilty on two separate occasions.

5           Mike Brown, who is the Chief Administrative Officer,

6    was present at the Council meeting, but he took no action

7    whatsoever.  The members of the City Council outside of Mayor

8    Swoboda took no action whatsoever, didn't say -- well, I take

9    it back.  One Council member did complain about the language

10   that Mr. Thornton was using, but only Mayor Swoboda was the

11   one that stopped him from speaking.

12          As the City Attorney, I took no action whatsoever,

13   other than to represent the City and to advise the City

14   Council as to how they could try to control Mr. Thornton and

15   his behavior at Council meetings.

16          THE COURT:  Let me ask you this, and I'll have

17   Mr. Thornton come up and speak in a minute, but this goes to

18   the issue of scheduling.  Mr. Thornton did file, as he was

19   required to do, a joint proposed scheduling plan, and as it

20   did comply with the rules, and it did set out the differences

21   in agreement that you all had over the discovery schedule, my

22   question to you though is assuming this case remains as the

23   original complaint reads, in your opinion, is this case ripe

24   for summary judgment now?

25          MR. HESSEL:  I would candidly, Judge -- I'm not

1    sure it's ripe for summary judgment because I'm still -- until

2    this morning when you were asking him questions on the record,

3    I was uncertain as to what his actual allegations were.   Now

4    that we have a record as to what his contentions are, rather

5    than me taking a deposition, we have it on the record, I

6    believe it is ripe for summary judgment.

7              THE COURT:   Okay, Mr. Thornton, come on up and

8    let's talk about this.   Your complaint is that on these two

9    occasions, you were not allowed to speak, or they stopped you

10   from speaking.

11             MR. THORNTON:   Yes, Your Honor.

12             THE COURT:   And what Mr. Hessel is saying is that I

13   shouldn't allow you to add other people first because you

14   don't have any allegations against them, and second, because

15   any amendment would be futile because you were actually

16   convicted of disorderly conduct for both of those occasions.

17   Is that correct?

18             MR. THORNTON:   All of it is not correct.   What is

19   correct is your last statement is that I was convicted in the

20   municipality and St. Louis County on the disorderly conduct

21   issue, who did separate me speaking and me refusing to leave,

22   so my being found guilty was based on me refusing to leave,

23   not me being denied to speak.   They separated it.   The same

24   thing that was in the municipality.   The Judge in Kirkwood is

25   not even concerned with what I said, but that I refused to

1    leave was the issue, so he found me guilty in Kirkwood and

2    also was found guilty in St. Louis County based on not me not

3    being able to speak, but because I refused to leave, that was

4    the disorderly conduct charge, as if I came in during a

5    meeting, sat down and refused to leave.

6           I was there after I was asked to speak, and Attorney

7    Hessel has just committed perjury in reference to him not

8    being associated with the decisions and what was said.  When

9    the City, when I believe Joe Godi asked and made a motion to

10   have me banned from speaking, and then they had discussion

11   about it, Attorney Hessel did state, "Yes, we can ban

12   Mr. Thornton from coming and speaking at City Council

13   meetings," so him making a statement that he did not say, or

14   that he did say, "We cannot ban Mr. Thornton" is a straight

15   out lie.

16              THE COURT:  Are these meetings recorded?

17              MR. THORNTON:  Yes, there are, Your Honor.

18              THE COURT:  Is there a recording of them?

19   Mr. Hessel, are there recordings?

20              MR. HESSEL:  There are tape recordings, Your Honor.

21   They are not videotaped or anything like that.

22              MR. THORNTON:  And the recording states that

23   Attorney Hessel states, "Yes, we can ban Mr. Thornton from

24   speaking."

25              THE COURT:  Well, here is what we're going to do.

1    Your complaint is going to be limited to the original

2    complaint you filed.   I'm going to deny the motion to amend to

3    the original defendants because I believe that any further

4    amendment would be futile, and therefore there is no reason to

5    add it and to complicate this case by adding in and serving a

6    whole bunch of defendants and coming back and finding out that

7    you don't have any allegations against them   What you are

8    claiming is that your First Amendment rights have been

9    violated, and were violated on the dates of May the 18th of

10   2006, and June 15th of 2006.

11           Let me take your schedule and plan that you have

12   proposed, and let's just start with all of the issues.   You

13   say that you should have until the end of this year to amend

14   your pleadings and additional parties.   What would be the

15   purpose of that?

16           MR. THORNTON:   Your Honor, I have no problem with

17   just adjusting it the way the City has it at this time, and

18   just go right through with it.

19           THE COURT:   Okay, and the Rule 26 disclosures, you

20   suggested that you would make those disclosures by August of

21   this year, and the defendant said April.   Why do you need

22   until August to make your disclosures?

23           MR. THORNTON:   I don't need till August.   I would

24   like to make it the same time.

25           THE COURT:   Expert witnesses, do you expect to call

1    expert witnesses?

2              MR. THORNTON:  Yes, Your Honor.

3              THE COURT:  What kind of expert witnesses do you

4    expect to call?

5              MR. THORNTON:  The expert witness, well, once

6    again, that was based on the filing of the amended petition,

7    so now that the expert witness, Your Honor, it would just be

8    based on my mental and physical examination, which Attorney

9    Hessel feels I really need the mental part, so that would be

10   the only --

11             THE COURT:  You would be presenting evidence of

12   your own mental condition?

13             MR. THORNTON:  No, a mental -- an expert stating my

14   mental condition, and physical.

15             THE COURT:  You would be calling a psychiatrist or

16   a doctor to testify at trial and make some opinions about your

17   own mental state?

18             MR. THORNTON:  Correct.

19             THE COURT:  What would that be relevant to?

20             MR. THORNTON:  Relevant to just the issues of going

21   through the harassment of being arrested and violation of my

22   civil rights.

23             THE COURT:  And do you have such a person?  Have

24   you received treatment for this?

25             MR. THORNTON:  No, I have not.

1          THE COURT:   There has been no treatment?

2          MR. THORNTON:   No.

3          THE COURT:   Well, if you were going to call any

4   expert witnesses, then you would need to disclose them and

5   provide reports by June the 6th.   I find it a little

6   confusing, but basically, if you do that, and you decide to

7   call -- I don't get this.   I mean, the physical or mental exam

8   part of your proposed plan, it says, "Plaintiff believes

9   necessary both physical and mental examinations.   Defendant

10  believes no physical and mental examinations are necessary and

11  opposes the dates."   The physical or mental examination is

12  usually where one party makes the other side submit to an

13  examination by the opposing party's expert.   In other words,

14  if you were suing and claiming emotional distress, Mr. Hessel

15  could go hire an expert witness and force you to sit down and

16  be examined by a psychiatrist, but it does not work the other

17  way.   You can't have the City of Kirkwood examined by a

18  psychiatrist, you can't have the City of Kirkwood examined by

19  a medical doctor.   If you're choosing to go get your own

20  examination and introduce that evidence for some reason, I

21  mean, that's up to you, but I just don't understand what

22  you're suggesting here by this plan.

23          MR. THORNTON:   That's exactly what I'm suggesting,

24  that I would go based on the aggravation and anguish that I've

25  gone through with these issues with the City of Kirkwood, John

1    Hessel, the Mayor, and the City Council, and Chief of Police,

2    I feel I have been damaged, and therefore, that's why I wanted

3    to have the examinations.

4              THE COURT:   Okay.   If you decide to have an expert

5    witness testify, you must disclose expert witnesses and

6    provide the report by June the 6th.   After that, if defendant

7    wishes to have a mental or physical examination of you

8    conducted, they will request that by June 15th, and have that

9    completed by July 15th, and the defendant's expert would then

10   need to be disclosed by August 1st and have their report by

11   that date.

12             What kind of depositions, what discovery do you need to

13   take, Mr. Thornton, in order to prove your case, or get ready

14   for trial?

15             MR. THORNTON:   Well, Your Honor, based on what

16   you've just decided, that changes just about everything, so

17   the depositions that I would be taking would be from the City

18   Council members, John Hessel, who made the statement of

19   perjury already, that I would like to have also recorded in

20   the deposition, and the Mayor, because even what Attorney

21   Hessel is trying to recall by memory seems to escape him

22   because I always have a presentation and a question to ask

23   when I spoke before the City Council, and so the Mayor

24   continued to interrupt me from finishing my presentation, and

25   then he just told me to sit down, and that's when I refused to

1    sit down, and I sat down until I was allowed to speak. They

2    chose not to allow me to speak, and then they arrested me.

3    That was the issue. It wasn't like he asked me to ask a

4    question, and I went blank. That's not the issue. But those

5    would be the ones that I would be deposing; the Mayor,

6    Attorney Hessel, and Joe Godi, and the Council members, Jim

7    Lynch, Connie Karr, Art McDonald, Tim Griffin, I think that is

8    it.

9           THE COURT: You understand that it's your

10    obligation when you take the depositions to pay for the court

11    reporter and the means of recording them, etcetera, right?

12           MR. THORNTON: Yes, Your Honor.

13           THE COURT: You have to do that. You set them up,

14    you pay for it, you understand that?

15           MR. THORNTON: I understand, Your Honor.

16           THE COURT: Let me hear from you, Mr. Hessel, and

17    let me see if the schedule I'm proposing is not exactly what

18    you all have proposed, but I'm thinking there are ways to

19    shorten this and get it moving. If I had your expert -- if

20    you have an expert, that's by August 1st, and then is there

21    any reason we can't complete all the discovery in this case by

22    October 1st?

23           MR. HESSEL: I don't think there is any reason why

24    we could not, Your Honor.

25           THE COURT: We'll have dispositive motions by

1    October 15th, and then I will set the case for trial in

2    February sometime, I don't have the precise date, but I'll

3    give you a trial date.  If there are earlier motions to be

4    filed, I would encourage you to do that.

5            Mr. Thornton, what I'm going to do is send out a case

6    management order that will have all the dates in here that set

7    out the deadlines.  You are representing yourself.  You are

8    required to comply with the Rules of Civil Procedure.  I

9    especially want you to understand that if the defendant files

10   a motion, you must respond to that motion within the time

11   limits set under the Rules of Civil Procedure, and the local

12   rules of the Court.  If you don't respond to a motion that's

13   filed, then there is a good chance I'll grant that motion.

14           I would expect that the defendant may be filing a

15   prompt motion for summary judgment.  Perhaps they will do the

16   depositions first, depositions or discovery first, that's

17   really up to them, but I want to warn you that you need to

18   file your response to that motion when it comes in.  I'm not

19   going to let you expand your claims because, you know, given

20   what I know about the prevailing law and as I understand your

21   claims, they appear to be ripe for summary judgment, given

22   especially that you were convicted of disorderly conduct on

23   these occasions, perhaps.  I haven't researched the law.

24   Perhaps you can still claim that your First Amendment rights

25   were violated, but you know, you're going to need to research

1    the law and see what you can prove, and I can just tell you

2    that you need to read the law. You need to understand what

3    the cases provide, and what there is a legal remedy for.

4          When you file claims such as failure to settle, which

5    just doesn't even exist, that makes the Court wonder whether

6    you're really just playing games with us here because nobody

7    has a duty to settle anything with anybody else. There is no

8    tort of failure to settle. That makes me wonder why you're

9    even here, but you have stated a claim so far, and it's

10    limited to those two incidents of your First Amendment --

11    violations of your First Amendment rights.

12          There is a lot of law on this. You can go to the

13    library and do research. You can also -- if you need to see

14    the local rules, or the Federal Rules of Civil Procedure, they

15    are available on our court's website, and so you can go to the

16    public library if you don't have access to the internet at

17    home and use their computers to access the website or do any

18    other research you need to do.

19          I will send out a case management order that

20    incorporates these deadlines. I may not have been as specific

21    about all of them as I normally would be, but please read the

22    order and it will tell you what you need to know

23          MR. HESSEL: Can I impose upon you in order to

24    avoid conflict with Mr. Thornton down the road, one thing you

25    did not address was interrogatories. As you know, I proposed

1     three interrogatories.   We proposed a presumptive limit of 25,

2     I don't know that we need those, but the defendants are

3     prepared to live with the presumptive limit, but I don't want

4     Mr. Thornton to walk out of here thinking that he can file 300

5     interrogatories against us.

6               THE COURT:   You can't, and I did see that that was

7     in the plan.   I apologize.   We're not going to have 300

8     interrogatories.   The presumptive limit of ten depositions and

9     25 interrogatories will apply in the case.

10              MR. HESSEL:   I'd ask for clarification.

11    Mr. Thornton has already indicated that he intends to take my

12    deposition and depositions of others.   As you can imagine, we

13    would be filing motions to quash with respect to certain

14    depositions that he may be filing, and again, I beg the

15    Court's indulgence to avoid conflict with Mr. Thornton down

16    the road, I want him to understand and the Court to understand

17    that we would be filing such motions in the event he elects to

18    proceed with depositions, which I suggest are completely

19    irrelevant and immaterial, and the last point, Your Honor, I'm

20    prepared to respond to Mr. Thornton's accusation of perjury if

21    you need me to do so for clarification.   I don't think I need

22    to do it.

23              THE COURT:   I'm sure the records will be what they

24    are, and there will be evidence of the fact since there is a

25    recording of these meetings, and that makes it easier so we

1    wouldn't necessarily have to rely on people's memories.

2              MR. HESSEL:  My only problem with that is I think

3    they only keep those tapes for six months.  I know that we

4    kept the tapes on May 18th and June 18th.  I don't know if we

5    kept recordings beyond six months.  They recycle them, as you

6    can imagine, so I don't know what's back there in August,

7    July, June.  Obviously, we'll check.

8              THE COURT:  Well, what I would expect is that you

9    would, as part of your initial disclosures, produce any that

10   exist, and then we'll go from there.  So, I don't think you

11   need to respond.  We'll wait and see where we go.  But, yeah,

12   I understand that there may be motions related to discovery,

13   but we'll just take that as it comes.  Court is in recess.

14              (A recess was taken.)

15

16                    REPORTER'S CERTIFICATE
          I, TERI HANOLD HOPWOOD, RMR, Official Court Reporter
17   for the United States District Court for the Eastern District
     of Missouri do hereby certify that the foregoing is a true and
18   correct transcript of the proceedings had in this cause as
     same appears from my stenotype notes made personally during
19   the progress of said proceedings.

20                    /S/ Teri Hanold Hopwood, RMR
                      TERI HANOLD HOPWOOD, RMR
21                    Official Court Reporter

22

23

24

25