1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF MISSOURI

3

4

5    CHARLES LEE THORNTON,

            Plaintiff,
6
        vs.                              No.  4:07-CV-79 CDP
7
     THE CITY OF KIRKWOOD,
8
            Defendant.
9
     - - - - - - - - - - - - - - - - - - - - - - - - - - -
10
     PRESENT:    The Honorable Catherine D. Perry, Presiding
11
     ATTORNEY FOR PLAINTIFF:   Plaintiff appears pro se
12
     ATTORNEY FOR DEFENDANT:   John M Hessel
13

14

15

16

17

18          Motion for Temporary Restraining Order

19                 January 18, 2007

20

21

22

23              TERI HANOLD HOPWOOD
              Registered Merit Reporter
24          Thomas F. Eagleton Courthouse
              111 South Tenth Street
25          St. Louis, Missouri  63102

Dockets.Justia.com

1          THE COURT:   We're here in the case of Charles Lee

2     Thornton versus City of Kirkwood.   This is case number

3     4:07-CV-79.    Mr. Thornton is here representing himself, and

4     the City of Kirkwood is not represented.   This case was just

5     filed not long ago, and Mr. Thornton is seeking a Temporary

6     Restraining Order without notice, and a preliminary and

7     permanent injunction.   So Mr. Thornton, tell me what it is you

8     want this Court to do and why you think you're entitled to it.

9          MR. THORNTON:   Yes, Your Honor, I would like for

10    this Court to allow me to speak at the City Council meetings.

11    There is protocol of a three-minute time limit to speak, and

12    it's an open mike, and you can say and address any issue that

13    you would like during this three-minute time session.

14          They have denied me this right to speak in the three

15    minutes by stopping me from speaking after three seconds of

16    speaking, and once after five seconds of speaking, not

17    allowing me to get into the detail or any part of my speech

18    which only lasts at the most three minutes.

19          I was handcuffed and physically, forcefully removed

20    from the City Council meetings, and in the paperwork that I

21    did not bring, but they had an article in a public -- in their

22    private meeting to try to have me banned from speaking at the

23    City Council meetings, but they said that would be a little

24    too harsh to ban me, ban me from coming to the meetings all

25    together, but they said that would be a little too harsh, so

1    they attempted to just allow me to come to the meetings but

2    not allow me to speak.

3            THE COURT:    What is it you want to say and why are

4    they so upset about what you're saying?  Just background so

5    I'll understand.

6            MR. THORNTON:    They issued me over 150 tickets for

7    construction equipment, and because of that, I have the

8    evidence which because I'm doing it pro se, because it did

9    cost the city over $500,000 for all of these issues, which I

10   know about because --

11           THE COURT:    I just wondered what sort of general --

12   that tells me the general topic.

13           MR. THORNTON:    Yes.

14           THE COURT:    You're asking me to enter an injunction

15   to tell the City Council that they have to allow you to speak

16   for three minutes?

17           MR. THORNTON:    Correct, that's what they are

18   already -- the protocol states that, but they are not letting

19   me do it, and so I'm just asking this Court to allow me to do

20   what the United States Constitution has granted me, which is

21   allowing me to speak during the allotted time that they have

22   allotted for everyone, not just me.  I'm not even asking for

23   minutes past the three minutes, I'm just asking for them to

24   allow me to use my three minutes that they have given every

25   other citizen of the United States in Kirkwood.

1            THE COURT:   Okay.  Well, I think you are raising a

2     federal question, although not as well as you might if you had

3     a lawyer, so I think there is a federal question issue here

4     since you are alleging that your First Amendment free speech

5     rights have been deprived, violated by the City.  But, why --

6     explain to me why we should not require you to give notice to

7     the City about this request, and also tell me what happened in

8     St. Louis County.  You went to St. Louis County Court already.

9            MR. THORNTON:   The meeting is tonight, Your Honor,

10    and because I've been arrested and handcuffed, and it does a

11    great damage to one's esteem and their status in the community

12    when you are handcuffed and removed from a Council meeting

13            THE COURT:   I'm asking you about notice, why we

14    can't give them notice.  Many times -- have you called them

15    and told them you're coming to court?  Have you asked the city

16    attorney, you know -- do they have a city attorney?

17            MR. THORNTON:   Yes, they do.  I've been discussing

18    this issue with them, and asking them to stop denying my civil

19    rights to come and speak at the meeting, and they constantly

20    refuse by arresting me, and the meeting is tonight, Your

21    Honor.  With the time of trying to do anything as far as to

22    get a notice and have them come to hear anything as far as not

23    being able to speak tonight, the meeting is tonight.

24            THE COURT:   Well, we have got telephones.  Don't

25    you know -- I mean, you can call them on the phone.  Notice

1      doesn't -- notice for an emergency request like this can be

2      whatever is practical under the circumstances, and your memo

3      said you thought it would take 15 days, but I think it would

4      take one phone call to say -- I mean, do you know who the city

5      attorney is?

6                  MR. THORNTON:   Yes, John Hessel.

7                  THE COURT:   He practices where, downtown or

8      somewhere?

9                  MR. THORNTON:   500 North Broadway.

10                 THE COURT:   He's less than a mile from here.

11                 MR. THORNTON:   My 15 days is the part that I

12     believe was being heard, the decision.

13                 THE COURT:   Why don't you want to just call

14     Mr. Hessel and say, "Get down here to Federal Court, we're

15     having a hearing, I'm asking for relief," so that both sides

16     could be represented here today?

17                 MR. THORNTON:   Your Honor, I did not have that

18     understanding because the understanding that I believed was

19     that it would have to take place several days, and the meeting

20     was tonight, and that's why I filed it first in St. Louis

21     County, and it was denied, but that was just yesterday, and so

22     I went today to try to have it -- so I would not be blocked

23     from speaking tonight.

24                 THE COURT:   Well, yesterday did you go to a judge?

25                 MR. THORNTON:   Yes.

1          THE COURT:   In St. Louis County?

2          MR. THORNTON:   Yes, Division 38.

3          THE COURT:   And the Judge, you attached to your

4   complaint an order.  I can't quite read it.  It didn't scan

5   very well, but I think it says we're denying it because we

6   think you must give notice to the opposing party.  Is that

7   what they said?

8          MR. THORNTON:   That's exactly what it says, Your

9   Honor, which in my opinion, I believe that that would cause --

10  well, and the lady, the clerk's attorney stated that this

11  would guarantee that it would not go through in the time

12  needed for tomorrow, which is now today, and therefore, that

13  would cancel my right to be able and have the freedom of

14  speaking today because she said it would not be able to be

15  done because of the notification and everything else, and so

16  my intent was just to have the freedom and right to speak

17  tonight, and they informed me that that would not happen in

18  St. Louis County because of the notification.

19         THE COURT:   Okay.  Well, here is what I'm going to

20  tell you.  Under Rule 65, it says that you have to have

21  specific facts shown by affidavit or verified complaint.  You

22  could testify here today and we could put you under oath, but

23  then the applicant's attorney certifies to the Court in

24  writing the efforts, if any, which have been made to give the

25  notice and reasons supporting the claim that that notice

1    should not be required.

2         In other words, if a Temporary Restraining Order is

3    going to be issued without notice, there has to be a good

4    reason, and usually that reason is something along the lines

5    of it's an emergency, and it's going to happen in the next ten

6    minutes, or hour, and I don't have time to pick up the

7    telephone and call them, or I think if I give them notice,

8    they will destroy the evidence, or they will do something

9    to -- I'm trying to get somebody to stop from cutting down a

10   tree, and if I call them and give them notice and tell them to

11   come to court in an hour, they will cut down the tree before

12   they come to court, that kind of thing.  You don't have any of

13   those things here, so I am going to deny your request for

14   Temporary Restraining Order without notice, but also without

15   prejudice.

16        You can get Mr. Hessel or somebody from the City on the

17   phone, tell them that you have filed this, and that I've said

18   I'm available for a hearing.  I have several matters at 1:30,

19   and the last thing I believe is at 2, so I could hear this

20   issue at 2:30, and if you come back, what I'll do is I'll just

21   set a hearing for 2:30 on the assumption that you wish at that

22   time to come back and renew your request for a Temporary

23   Restraining Order.

24        You can call Mr. Hessel or the City and tell them that

25   you filed this motion and these papers, and you're up here and

1    I've said I will hear it at 2:30, and then they'll know, and

2    if you want to have a lawyer come down here and respond, they

3    have a right to do that, and I won't be doing it ex parte, but

4    it would still happen before tonight's meeting because I think

5    that this is the kind of thing where they ought to be heard,

6    and you know who they are.   There is no reason you can't try

7    to notify them and tell them we have a hearing.   If they say,

8    "Well, I don't care, I'm not going to come," then we'll go

9    forward without them here, but we have to give them some

10    chance to appear and be represented.

11              MR. THORNTON:   I was misunderstanding of it, Your

12    Honor.

13              THE COURT:   I'm denying it right now, but it's

14    without prejudice, and I'm resetting a hearing at 2:30, and at

15    that time you can ask me to undo the denial.   Now if that

16    doesn't work out and you change your mind and you don't show

17    up at 2:30, the denial will just remain and this will be the

18    end of the motion, okay?

19              MR. THORNTON:   I'll be back, Your Honor.

20              THE COURT:   I had a feeling you might be.   I'll see

21    you then.   At that time you need to let me know what you've

22    done to try to reach them, and so you need to -- you know, if

23    Mr. Hessel isn't available, you need to ask can he be reached,

24    and if he can't, then who else can speak on behalf of the City

25    of Kirkwood, and you can call the City offices.   I mean, there

1  are a variety of things you can do, but we want to do that as

2  soon as possible, and so we'll do this at 2:30, okay?

3           MR. THORNTON:  Thank you.

4           THE COURT:  Court is in recess.

5              (A recess was taken.)

6           THE COURT:  We are again here in the case of

7  Charles Lee Thornton, plaintiff, versus the City of Kirkwood.

8  This is case number 4:07-CV-79.  Mr. Thornton was here earlier

9  today and he filed this suit and sought a Temporary

10 Restraining Order without notice, and I denied it without

11 notice, but also without prejudice, and told him he needed to

12 attempt to contact the City of Kirkwood to see if they wished

13 to be represented, and Mr. Hessel, you are here, so it's John

14 Hessel for the City of Kirkwood?

15          MR. HESSEL:  It is, Your Honor.

16          THE COURT:  Are you the City Attorney normally?

17          MR. HESSEL:  Yes, Your Honor, since 1985.

18          THE COURT:  I'm glad to see you here.

19 Mr. Thornton, go ahead and step back up here to the lectern,

20 and although you told me earlier today, the defendant was not

21 represented at that time, so I'll ask you again to state what

22 you're asking for this Court to do, and why you think you're

23 entitled to that relief.

24          MR. THORNTON:  Yes.  Thank you, Your Honor.  I'm

25 asking the Court to allow me my constitutional rights of free

1    speech during the City Council meetings.  They are held twice

2    a month.  During this time, the public hearing portion of the

3    meetings, there is no time limit to speak in reference to the

4    issue on the table.  During the public comments section, there

5    is a three-minute time limit, and there you must --

6             THE COURT:  What's the earlier section?

7             MR. THORNTON:  Public hearing, and that is on a

8    particular issue, where you must address that issue, but there

9    is no time limit to speak.  The three-minute public comment

10    section is totally open for any form of communication during

11    the allotted three-minute time.

12          The City has interrupted and arrested me during these

13    occasions, and I'm asking the Court to grant this temporary

14    injunction stopping the City from violating my civil rights

15    during these times.  I have issued to the City of Kirkwood,

16    the City Attorney was present at the time, this document.  Can

17    I bring you this copy?

18             THE COURT:  If you'll hand it to the court security

19    officer, he'll provide it to the clerk.

20             MR. THORNTON:  It's words because they did not have

21    -- or I'm sorry, they may have had, but they did not enforce

22    the three-minute time limit, so therefore other people ran on

23    four minutes, 10 minutes, 15 minutes.  When I started speaking

24    and I wanted to run on, they decided to enforce the

25    three-minute time limit, so this creates me to now be creative

1    and put everything I need to say and write it down, and I

2    can't afford to stutter or have any brain lapse because I only

3    have three minutes.  So in this presentation, I must prewrite

4    it, and then practice it so I can present it.  So I ask that

5    if these words that I choose to use in my presentation, if

6    they violate my civil rights in the free speech, please

7    acknowledge them to me in writing or even say it from the

8    Mayor or City Council or even Attorney Hessel, tell me and I

9    will not use them in my presentation, but if you do not tell

10   me not to use any words I have on this sheet of paper, then I

11   will have to believe that my constitutional rights, because

12   they are in the Bible and the dictionary, that I am allowed to

13   use these words.

14          I believe I'm not -- when I gave these documents and

15   others to Attorney Hessel, who was present at City Council

16   meetings, he immediately turned around and put them in the

17   trash can in the City Council meeting.  This did upset me, but

18   as long as I was able to speak, I had no problems with their

19   actions.

20          THE COURT:  Hold on.  What you've given me is a

21   one-page sheet, and it says at the top, "Webster's Dictionary

22   definitions," and it has some words, "ass, fool, damned,

23   idiot, jack ass, monkey, signified, hell," and there is a

24   definition for each one of them, and then it says, "Please

25   read over the words and their definitions.  Cross a line

1    through the word or words from the Holy Bible and the

2    Webster's Dictionary which you believe is not guaranteed by

3    the Constitution, being the First Amendment right of free

4    speech.  Please sign your name and title so as no

5    misunderstanding will be had."  And then there is a note, "If

6    you choose not to respond, this will be understood as my right

7    to use freely these words in my presentations," and there is a

8    signature, blank, where it says signature, colon, and a blank,

9    and title, colon, and a blank, and it says Kirkwood, Missouri

10   City Council meeting, date, blank.  So you're saying you want

11   the City to have to sign this, or I don't quite understand

12   what you're telling me you want.

13            MR. THORNTON:  Yes, I read it and I passed it out

14   to the Mayor, the City Council, and the City Administrator and

15   Attorney Hessel, and I said, "If you have a problem with the

16   words that I have used in the past, or choose to use, these

17   are some of the words that I feel you may have an issue with,

18   so please acknowledge these as being words that I cannot use

19   legally in this proceeding as far as the City Council meeting,

20   and I will not use them," but they did not respond at all to

21   my asking this, and no one signed and got back to me.

22         Once again, some of the documents I gave Attorney

23   Hessel, he did turn around and put it in the trash can without

24   even looking at them in the City Council meeting, and then the

25   Mayor himself turned the document over, upside down, and

1  pushed it away from him and refused to even read it, and these

2  are just what they do.   But I didn't have a problem with that

3  because I was speaking at the time, but now they have to get

4  more creative, and they did have in the newspaper article,

5  which I didn't bring, it states that they wanted to ban me

6  from coming to all -- well, they suggested banning me from

7  coming to all City Council meetings, but they talked about it

8  and decided that that was considered -- that was a little bit

9  too harsh, so they decided to allow me to -- well, another

10  action was allow me to come to the meetings, but allow me not

11  to speak, and they also said that that would be inappropriate

12  at the time and they would not lower themselves to my level.

13          However, allowing me to come to the meetings and stand

14  up and say any words on this paper that I asked them if there

15  was a problem I would not use, and then stop me and arrest me

16  for using any of the words, which I clearly asked because I

17  wanted to follow their protocol which has changed so many

18  times that you have to kind of read it before trying to -- I

19  dare say, try to keep up with trying to stop me from trying to

20  speak because each time it's a protocol change on their own

21  paperwork after I did something already, so I can't do it

22  again, and now the latest change that they made was that no

23  one can speak for more than ten times on any issue that's been

24  heard already before the City Council.

25          Now, it just so happens that only discriminates against

1   me.   I'm the only one in the State of Missouri or in the
2   United States, for that point, that has presented myself to
3   the City of Kirkwood with an issue that they have refused to
4   respond to, and so I just want this body to acknowledge my
5   constitutional rights to speak.   I don't want extra time, I
6   want three minutes that everyone else is allowed to speak
7           THE COURT:   Okay, so you're asking that I order
8   them to allow you to speak tonight at the meeting, is that
9   what you're doing?
10          MR. THORNTON:   Yes.
11          THE COURT:   Well, you know, I'm still having
12  trouble understanding what it is you want to speak about,
13  because the City Council, it seems to me I shouldn't just
14  enter an order saying anybody can get up and talk about
15  anything.   I mean, doesn't it have to have something to do
16  with the business of the City?
17          MR. THORNTON:   No, ma'am   Well, yes, ma'am   One,
18  the public hearing does.   It has to directly address what is
19  being spoke of at the public hearing section, which has no
20  time limit of speaking, but the other one is the public
21  comment.   It has no control over what is said during the
22  public comment time, but it does have the regulation of three
23  minutes.
24      The other one, like I said, that's trying to stop me
25  from speaking all together, would be that I've spoke on it ten

1    times, so they can't say we're not going to let him speak,

2    they are saying, "Well, he can't speak on that any more

3    because he spoke on it ten times," which is still in effect

4    saying I can't speak any more on the issue.   The public

5    comment section has no limitation on what you can speak of.

6    It's totally open.

7              THE COURT:   Okay.   And you believe they are not

8    going to let you speak if you get up and try to speak, is that

9    what you're saying?

10             MR. THORNTON:   My reputation of being arrested has

11   been destroyed.   It is very embarrassing being handcuffed and

12   drug out of a public meeting when relatives and friends and

13   family members are there, and also, the damage it does to the

14   mental state of an individual is very -- is very wrong.   So

15   the fear of going in knowing that they can, because they have

16   twice, three times before, the third one was an issue with me

17   coughing, literally choking on a piece of candy, and I was

18   arrested, but that's -- they chose not to -- they said they

19   lost the ticket and chose not to proceed with it, so that was

20   dropped, but the fear of going into a room that is under the

21   United States Constitution, and they call you up to speak, to

22   have a fear of you might say something that might offend them,

23   well, some people are offended because I'm African American.

24   I need not say a word and it can offend some people, but the

25   United States Constitution should guarantee my right to at

1   least speak and not be interrupted and stopped and then

2   handcuffed and removed just because they didn't like what I

3   might have to say.  Granted, three seconds or five seconds,

4   that doesn't get into the total basis of my discussion.

5           Now once again, some of words that I use, "jack ass,"

6   and I don't just say, "Mayor, you are a jack ass."  What I

7   said is, "The mayor is displaying jack ass-like qualities,"

8   which means that the quality that he is displaying is very

9   stubborn and not listening what I have to say.  When I'm

10  speaking to you, if you choose to turn your back to me, and

11  the Mayor and Attorney Hessel literally turn and looked, and

12  the Mayor was reading, me I have to still continue my speech,

13  realizing that you're not caring one word what I'm saying, yet

14  I still only have three minutes to say it.

15          But when they stop me from even the three minutes from

16  speaking because they don't want to even hear what I have to

17  say, that is the content-based discrimination because they

18  won't even know what I'm going to say.  One time, like I said,

19  I was arrested after saying, "Jack ass, jack ass, jack ass."

20  Now they don't know --

21              THE COURT:  You think it's your position that I

22  should order them to let you speak for three minutes even if

23  what you're going to stand up and say for three minutes is,

24  "Jack ass, jack ass, jack ass," three minutes worth of that,

25  it would be a violation of your constitutional rights if you

1    didn't -- I mean, I'm trying to understand what you want to

2    say.

3           MR. THORNTON:  I do not have the speech ready for

4    tonight, but my question is if it's only three minutes,

5    sometimes no one is there, I'm the only speaker, so that's

6    only three minutes, and sometimes, depending on the issue,

7    like the smoking ban, there was a lot of people there for

8    that, but sometimes it's not that many people there, so only

9    three minutes.  If I choose to say words that are legally

10    protected by the United States Constitution, I think I should

11    be able to say them, but I'm not going to waste my time in

12    three minutes to just say, "Jack ass, jack ass, jack ass,"

13    without some explanation, and why I am saying that they are

14    displaying these characteristics, and that's the problem

15         I'm saying that they are displaying these

16    characteristics, and they don't want to hear it any more, so

17    they are trying to create a way to stop me, knowing I'm the

18    only individual that has spoken more than ten times on a

19    situation, and they can say a blanket "no one can speak ten

20    times any more," but no one even wants to speak ten times.

21    I'm the only individual that's before the City Council that

22    has an issue that I want to bring up.

23         That's why without this order, they can still at any

24    time stop me and violate what I believe is my constitutional

25    rights of free speech, even if I choose to say, "Jack ass,

1   jack ass, jack ass," for three minutes.  If it's a word that

2   is in the dictionary and in the Bible that is legally

3   acceptable to use, I think I should be able to use it, but I

4   guarantee you I'm not going to waste my time to say, "Jack

5   ass" for three minutes and then go sit down and think that I

6   got my point across.

7            THE COURT:  Okay, have a seat now and let me hear

8   from Mr. Hessel and see if he wishes to make any response to

9   the request for Temporary Restraining Order.

10           MR. HESSEL:  Thank you, Your Honor.  First off, let

11  me clarify.  The City of Kirkwood has never refused to allow

12  Mr. Thornton to speak.  He has always been afforded the

13  opportunity to speak.

14           Now, I will tell you that Mr. Thornton has appeared at

15  almost every Council meeting, I'm estimating by this, for the

16  last ten years, probably longer.  In many instances, he has

17  been threatening, he has been rude, he has been using abusive

18  language.  He has been wasting the Council's time.

19           For example, Your Honor, you used the question as to

20  whether or not you could stand up there for three minutes and

21  say, "Jack ass, jack ass."  He stood up there for three

22  minutes and said, "Because no one listens to me and you're all

23  a bunch of jack asses, I'm going to speak in donkey-ese," and

24  went, "hee-haw, hee-haw, hee-haw," for three minutes, as an

25  example.  That's the kinds of comments that Mr. Thornton has

1    been making at the public meetings.

2           We have had citizens who have complained because they

3    have real business to attend to at that Council meeting, and

4    so the Council decided to adopt guidelines after putting up

5    with Mr. Thornton for well over ten years.   Those guidelines

6    are such that if we have a public hearing, anyone can speak on

7    a matter related to the public hearing.

8           Now Mr. Thornton has identified two instances where he

9    was stopped from speaking.   The first one involved a public

10   hearing because he got up and he made comments not related to

11   the public hearing, which was someone asking, I can't remember

12   if it was Bethesda Home or one of the other nursing homes in

13   town, was asking for a rather significant expansion to their

14   building, a five to ten-million-dollar project, and

15   Mr. Thornton thought it was appropriate for him to stand up to

16   question them whether or not they realized that if they were

17   African American and if they were engaging in certain

18   construction activities, that they might be arrested.

19           Just as a matter of background, Your Honor, this has

20   gone on because Mr. Thornton decided that he was going to

21   ignore the rules with respect to his demolition company, and

22   he was cited and convicted for well over 100 violations in the

23   Municipal Court and in the Circuit Court of St. Louis County.

24   Since that point -- and he was fined over $30,000, and the

25   City has made no attempt to collect that money from him.   We

1   have said, "You just go on and go about your business and do
2   it in a meaningful manner, and we'll let it go."
3           Unfortunately, however, Mr. Thornton has never let it
4   go, and he comes back at every Council meeting, and he accuses
5   the Director of Public Works of being a liar, and accuses him
6   of perjury, accuses others of complicity in that whole
7   conspiracy, including myself, and people that work for me as
8   the prosecuting attorney.  He has picketed my office, picketed
9   other offices of Council members, accusing them of racial
10  bigotry, and he comes up at these meetings, and that's his
11  theme, is that their is racial bigotry, and the Council has
12  allowed him to carry on with those accusations.  If they are
13  in the public hearing context, then he has been asked to stop
14  and address the issue before the City Council relating to the
15  public hearing.  On the one occasion, he refused to do that,
16  so he was asked to sit down.  He refused to sit down, he sat
17  down, and then laid down in the middle of the Council chamber.
18          On the second occasion, he got up to speak, and I don't
19  remember the precise words that he was using, I believe that
20  he was calling members of the Council an ass, but my memory
21  isn't that good, Judge, as to precisely what it was, and some
22  members of the City Council said, "Mr. Thornton, I wouldn't
23  let you use that language in my home, don't use it here," and
24  he proceeded to use it again and again, and the Mayor stopped
25  him and said, "Mr. Thornton, if you have something to address

1    to the Council that's particularly relevant, address it.

2    Otherwise, take a seat," and he proceeded with the same litany

3    of them being asses, at which time he was stopped, asked to

4    take a seat, and he did precisely the same thing, sat down,

5    and then laid down in the middle of the Council chamber, for

6    which he was arrested and convicted for peace disturbance.

7        That's what has taken place.  I suggest to you, Judge,

8    from the legal standpoint, he is asking you to issue a

9    Temporary Restraining Order based upon events that occurred on

10    May 18th and June 15th of 2006.  We're now into January, as we

11    all know, of 2007.  That's six months.  Within that six

12    months, although Mr. Thornton hasn't appeared at every Council

13    meeting, he has appeared at Council meetings, and he has

14    spoken, and he has been entitled to speak his three minutes.

15    He has not been stopped.

16        I suggest to you that there is no immediate irreparable

17    harm   There is no evidence whatsoever, even by his

18    allegations today, that the City of Kirkwood intends to stop

19    him as long as he complies with the guidelines and the decorum

20    that everyone else has to comply with, and that's in his

21    fears, he might run afoul of that, as he has in the past, but

22    Your Honor, that's the risk that he runs, and that doesn't

23    give rise to a Temporary Restraining Order.

24        We are prepared, as we have been for well over ten

25    years, to deal with Mr. Thornton on an individual

1    case-by-case, or I should say council-meeting-by-council

2    -meeting basis, and if he wants to come up and speak under

3    citizen's comments, as everyone there is, he is limited to

4    three minutes, and he is limited to addressing something that

5    has some relevance within the City, and Mr. Thornton is

6    correct.  We did adopt, as part of a guideline, that if you

7    have spoken on the same matter for ten times, unless that

8    matter is still pending before the City Council, then you're

9    being repetitious, and there is no reason for us to just allow

10   people to carry on even if it's for three minutes over and

11   over and over, so we established that rule.

12        Candidly, he has tried to -- he has pushed the envelope

13   on that issue.  I don't know whether or not he intends to

14   speak on the same matter, but he to the best of my

15   recollection, he has not been stopped for violating that

16   guideline.

17        In any event, Your Honor, so that you understand also,

18   we have been asked to identify the words that he can and

19   cannot say and sign off on that piece of paper.  The problem

20   with that, of course, is that it's all about the context.  If

21   you're using particular words in the proper context, they are

22   not necessarily vulgar, what he is saying, but it's the

23   context in which he's saying them

24        As you may recall, Judge, in your prior life, Bob

25   Hoeneke hired me, and I was with Bob Hoeneke for years.  As

1   you know, I am an advocate of the First Amendment on behalf of

2   the St. Louis Post Dispatch, Belleville News Democrat, and

3   most other media clients in town, so I understand and

4   appreciate someone's right to speak, and as Bob Hoeneke would

5   say if he was here, you know, "It's the harsh words that need

6   First Amendment protection."  I'm all for that.  Yet, you

7   still have to speak in the proper time, place, and manner

8   context.

9        So, we're here because Mr. Thornton has decided to

10   ignore proper time, place, and manner context of his speech on

11   at least two occasions.  But again, more significantly to the

12   issue, there is no evidence whatsoever to suggest that if

13   Mr. Thornton wants to speak this evening that he will be

14   precluded from speaking.  I suggest to you quite to the

15   contrary, he will be permitted to speak.

16        Now, again, if he interrupts a public hearing as he has

17   done in the past, he may be stopped, and if he respects the

18   wishes of being stopped and sits down, that will be the end of

19   it.  Similarly, if he decides to address the Council under

20   citizen's comments, he's entitled to do that, as long as it's

21   relevant to a matter relating to the City, or something that

22   even that the City Council can address, and I tried to point

23   out to Mr. Thornton in the past ten years that if he thinks

24   that the judicial system failed him and that he was wrongfully

25   convicted, the City Council can't help him  Although he wants

1    to continue to address it before the City Council, they cannot

2    help him

3         He has brought lawsuits in the Circuit Court, the Court

4    of Appeals, Missouri Supreme Court on different occasions, and

5    each one of those, the Eastern District of Missouri, the

6    Western District of Missouri, and I think he also tried in the

7    Eighth Circuit Court of Appeals. We have tried to address all

8    of his complaints through the judicial system rather than

9    through legislative Council process, but if he still wants to

10    come up and speak, we'll listen to him again, as long as he

11    complies with the guidelines that have been established.

12         THE COURT: Mr. Thornton, may I hear any response

13    you wish to make?

14         MR. THORNTON: Yes, Your Honor. Attorney Hessel is

15    very generous with the time that I appeared before the City of

16    Kirkwood. The issue of the tickets that I received that I

17    thought I was wrongly given started in 2000 to 2001, so during

18    that time, it was the court proceedings. I didn't start going

19    to the City Council meetings until about 2002, when I started

20    addressing the City, asking them to stop the one individual,

21    the Public Works Director, from submitting these fraud

22    documents and harassing me. So from 2002 to 2000 -- just

23    turned 2007, it stretches it even as five years, so he's kind

24    of doubled that.

25         The documents I'm showing the City of Kirkwood, it

1    clearly states in their, I guess their laws, the City laws, I

2    may not be using the right terms, but there are guidelines

3    that if an employee is found guilty of fraud, perjury, or

4    committing any illegal act, they will be removed from office.

5    The documents I'm showing Attorney Hessel and everyone clearly

6    shows that he did commit fraud.   They are refusing to

7    acknowledge it, and therefore, not having to take action

8    because they are silent.   When I even ask them a question, no

9    one says a word, a simple question in reference to based on

10   the protocol, because there was a section in the protocol that

11   said that of course public comment was three minutes, and it

12   said for public hearing, follow the said protocol as public

13   comment.   To me, that means the public hearing will be three

14   minutes also, and I asked them about the clarification, and

15   the Mayor, Attorney Hessel, and the City Administrator and all

16   the City Council members refused to respond to a simple

17   question for my understanding so I can stay within that time

18   limit.

19        So Attorney Hessel was also incorrect as far as me

20   calling them, "You all jack ass, jack ass, jack ass."  I don't

21   have the time to stand up there and just call them jack asses

22   without my presentation.   I only stated that's what I said in

23   a three-minute comment.   I was stopped at three seconds.   I

24   said, "Jack ass, jack ass, jack ass," and what I wanted to say

25   was now this is what the City Council, the Mayor, Attorney

1    Hessel and everyone else want the City to believe, that's all

2    I'm talking about, but I'm talking about, and then I went into

3    my presentation.  I did not get in to say any of that.  I

4    said, "Jack ass, jack ass, jack ass."  The Mayor stopped me

5    and said, "You're going to have to sit down," and I said,

6    "Well, I didn't get to finish.  They said no, called the

7    police over, and I was arrested.  No, Your Honor, I did not

8    stand up and say, "Jack ass, jack ass, jack ass."

9         Now the first time when I did give my "jack ass"

10   presentation, when I realized that they were not listening to

11   the evidence that I was presenting them, and I informed them

12   that it appears that they are having a stubborn type stand,

13   and then maybe I should talk in jack ass-ese, and so for the

14   rest of that time, that was only maybe a minute left, because

15   I still gave my presentation first, I did speak in jack ass,

16   which they, I guess, understood, I don't know, but my point is

17   if I can't speak on the words and then because there is a

18   three-minute time limit, if I have to prepare a speech and

19   they consider just to stop me based on the word, then that

20   destroys the speech, time limit to even make the presentation.

21        Now Attorney Hessel was wrong based on me not being

22   affected in the last City Council meeting because the Mayor

23   did stop me from the presentation that I had because he said

24   that I had presented it before, and that they just didn't want

25   to hear it, so he was wrong because I have been interrupted on

1    several occasions at the City Council meetings, but the reason

2    I'm here, I should not be denied a right to speak, and I

3    understand the contents in which Attorney Hessel is referring

4    to, and therefore, I stay within, but for me simply to say,

5    "Jack ass, jack ass, jack ass," and then not allow me to go

6    any further, and then fabricate that I just started yelling,

7    "Jack ass, jack ass," like I have nothing else to do is wrong.

8         Now, I even went as far as before my speech, I took my

9    time to pre-empt them to let them know I was going to say the

10   word "nigger," and I said, "I'm going to say the word 'nigger'

11   in my presentation," and so what I said was the word "nigger"

12   has been used to diminish and degrade the African American

13   while they were slaves a long time ago, and I choose not to

14   use the word, and any time anyone treats anyone in that manner

15   I believe is wrong.

16        So, but even with me saying, "Jack ass, jack ass, jack

17   ass," and then stopping me violates clearly my rights of

18   speaking because they have no idea what I'm going to say, and

19   Your Honor, I just -- it's the time it takes to present and

20   have the City Council constantly create ways to stop an

21   individual from speaking clearly on this civil rights

22   allotment of time that they have already set aside, I just

23   think is wrong, Your Honor, and I'm just asking the Court to

24   give me the opportunity to speak tonight.

25        Yes, I have a strong possibility they allow me to speak

1    tonight, even if I say "jack ass" because I've been here now,

2    but they meet twice a month, Your Honor, so that does not

3    guarantee until another time is done that they are going to,

4    you know, stop arresting me for just saying words because they

5    don't allow me the time to even speak to even explain the

6    words.  I just believe that the Constitution is supposed to

7    uphold my right to speak, and yes, no, I've never cursed them

8    out.  They might not like what I have to say.  Well, that's

9    understandable.  I don't like what they have to say sometimes,

10   but I still want to have my opportunity to speak and be heard

11   based on the United States Constitution.

12            THE COURT:  All right.  Well, in order to receive a

13   Temporary Restraining Order from me, you would have to show

14   that you're likely to succeed on the merits of your case, that

15   you are threatened with immediate and irreparable harm, that

16   the harm to you outweighs any harm to the other side, and that

17   the public interest favors entering the injunction.

18            I conclude based on everything you've provided, and

19   although this was not sworn testimony, I'm considering it as

20   if it were evidence, that you have not shown either that

21   you're likely to succeed on the merits or that you are

22   threatened with irreparable harm, and I'm going to deny the

23   request for a Temporary Restraining Order.

24            I don't know -- I don't see any threat that you will

25   not be allowed to speak tonight, and I don't believe that

1    there is any necessity to protect any constitutional rights

2    for me to enter this extraordinary remedy, and that's what a

3    Temporary Restraining Order is, it's an extraordinary remedy,

4    and you have not made the showing necessary to get that.  So,

5    I'm going to deny your request for a Temporary Restraining

6    Order.

7         Now, I do -- you have filed your lawsuit, and you've

8    asked for a preliminary and permanent injunction, and that

9    lawsuit can go forward, and the case was just opened earlier

10    today, so let me just ask you, did you pay the filing fee of

11    $350?

12         MR. THORNTON:  Yes, I did, Your Honor.

13         THE COURT:  Now what you have to do is serve

14    process on the City.  Even though Mr. Hessel showed up for

15    this emergency hearing, that's not the same thing as saying

16    they have been served, so you have to follow the Federal Rules

17    of Civil Procedure, if you want your case to proceed, and

18    you're required to do that as soon as possible, so you need to

19    proceed in the way -- there are various ways of achieving

20    service, but you'll need to serve them

21         Once a lawyer has entered an appearance, and if an

22    answer is filed, I would set the case for a scheduling order

23    and we can schedule the rest of the case, but I will wait to

24    do that until the case has been served on the defendant.  I

25    am, though, at this time denying the motion for Temporary

1    Restraining Order, and then the case will proceed as a normal

2    case.

3         I will enter an order to that effect shortly.  So it

4    will be mailed to you.  Please, if you're going to represent

5    yourself in this case, and there are lawyers who take First

6    Amendment cases, Mr. Hessel being one of them, but I'm not

7    going recommend you try to hire him, but there are lawyers who

8    take First Amendment cases.  There are organizations that work

9    to protect First Amendment rights, including people like the

10   American Civil Liberties Union.  I don't know if you have

11   approached any of those advocacy type organizations or lawyers

12   who handle this kind of case to see if someone would take your

13   case, but you are free to do that if you want to.  Obviously,

14   you are allowed to represent yourself, and you have a right to

15   do that, so it's fine with me if you represent yourself.  I

16   want you to know that there might be lawyers who will take

17   your case.  I don't know.  So that is my ruling in this case,

18   and court is in temporary recess.

19             (A recess was taken.)

20

21

22

23

24

25

1                          REPORTER'S CERTIFICATE

2              I, TERI HANOLD HOPWOOD, RMR, Official Court Reporter

3    for the United States District Court for the Eastern District

4    of Missouri do hereby certify that the foregoing is a true and

5    correct transcript of the proceedings had in this cause as

6    same appears from my stenotype notes made personally during

7    the progress of said proceedings.

8

9                          /S/ Teri Hanold Hopwood, RMR

10                         TERI HANOLD HOPWOOD, RMR

11                         Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25