UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| CHARLES LEE THORNTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:07CV0079-CDP |
| CITY OF KIRKWOOD, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff Charles Thornton ("Plaintiff" or "Thornton") has been a regular attendee at Defendant City of Kirkwood's ("Defendant" or "Kirkwood") council meetings for five or six years. Although Plaintiff's behavior is disruptive to those trying to conduct business at these meetings, he has never been banned from a meeting and he has been afforded every opportunity to exercise his right to speak at the meetings provided that he complies with the reasonable restrictions applicable to every person in attendance at these public legislative meetings.

Kirkwood has been tolerant of Plaintiff's harassing behavior. However, at two city council meetings held on May 18, 2006 and June 15, 2006, Plaintiff's conduct and his refusal to abide by the reasonable time, place and manner restrictions regarding conduct at these public meetings created an unacceptable disturbance and hardship to those in attendance. As a result, Plaintiff was arrested and convicted in St. Louis County Circuit Court of two counts of peace disturbance.[1] On both occasions, Plaintiff was acknowledged by Michael Swoboda, the Mayor of Kirkwood, and was

---

[1] Under Rule 37.01 of the Missouri Supreme Court Rules, Plaintiff appealed his Kirkwood convictions to St. Louis County Circuit Court. (SUMF at ¶ 54). Plaintiff has further appealed both convictions to the Missouri Court of Appeals, Cause No. ED89560. That appeal is currently pending.

1399214.01

Thornton v. City of Kirkwood  Doc. 38  Dockets.Justia.com

allowed to speak. However, in both instances, Plaintiff failed to follow the applicable guidelines while speaking. On both occasions, Swoboda warned Plaintiff to follow the rules, but he refused. Plaintiff then refused to leave the podium area to allow other citizens to speak, thereby further disrupting the meetings and forcing Swoboda to temporarily adjourn the meeting while the Kirkwood police dealt with Plaintiff.

Six months later, in January 2007, Plaintiff filed a Complaint seeking a temporary restraining order and preliminary and permanent injunctive relief asking this Court to prohibit Kirkwood from "interrupting, stopping plaintiff from speaking, handcuffing, arresting [sic] In addition, violating other civil rights allowed a citizen if the United States of America, during City of Kirkwood meetings." (See Complaint at p. 3, ¶ 1 of WHEREFORE clause). Plaintiff made no claim for monetary relief. (Id.). On January 18, 2007, this Court held a hearing and denied Plaintiff's request for a Temporary Restraining Order. (See January 18, 2007 Order denying Temporary Restraining Order).

Kirkwood is entitled to summary judgment because it did not violate Plaintiff's constitutional rights by imposing and enforcing reasonable limits on the time, place and manner of speech at Kirkwood city council meetings. Further, Plaintiff has already been convicted of two counts of peace disturbance relating to the actions about which he complains, and, therefore, his claims are barred by the doctrine of *res judicata*. Finally, Plaintiff's claim is moot because Plaintiff has been allowed to attend and speak at council meetings before and after the filing of his Complaint. Therefore, Plaintiff's claim fails because there is no actual controversy for this Court to address. For the reasons set forth herein, summary judgment should be granted in favor of Kirkwood and injunctive relief should be denied to Plaintiff.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court will grant a motion for summary judgment where all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." The initial burden of proof is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III. BACKGROUND FACTS

Over the years, Plaintiff has regularly attended the Kirkwood city council meetings and continues to do so. (See Statement of Undisputed Material Facts (hereinafter referred to as "SUMF") at ¶¶ 2, 59). Plaintiff has never been prohibited from attending a meeting nor has Plaintiff been stopped for speaking at such meetings so long as he follows the rules and guidelines for speaking at public meetings. (Id.).

Plaintiff is familiar with Kirkwood's written guidelines and rules of decorum, which are available at all meetings. (SUMF at ¶¶ 2-4). During Kirkwood's council meetings, citizens are allowed to speak during two specified periods relevant to this lawsuit: the public comment period during a Public Hearing, and the Public Comment portion of the council meeting. (SUMF at ¶ 5). During the public comment period of a Public Hearing, citizens may either "speak in favor or against the issue" of the Public Hearing or "ask a question" relating to the subject of the Public Hearing. (SUMF at ¶ 6). Citizens are also allowed to speak for three minutes on any relevant matter during the Public Comment portion of each meeting. (SUMF at ¶ 7). Whenever anyone speaks at Kirkwood's council meetings, they are expected to "be respectful" and are prohibited

3

from using "foul, abusive or inappropriate language, displays or other materials." (SUMF at ¶ 8). The guidelines warn that a citizen will not be allowed to continue to speak and will be ordered to leave the podium and take his or her seat if that citizen fails to follow any of the guidelines. (SUMF at ¶ 9).

On May 18, 2006, the Kirkwood city council held two Public Hearings related to the expansion of businesses in Kirkwood. (SUMF at ¶ 10). Plaintiff admits that his purpose in attending the May 18, 2006 meeting was not to speak on the subject matter of either public hearing. It was "because of the City's constant harassment, bogus tickets, document fraud and perjury, the reason I was at all those meetings was to discuss with them on this statement." (SUMF at ¶ 13). The first Public Hearing related to the Bopp Chapel Funeral Home and Plaintiff asked to speak during this Public Hearing and was allowed to do so. (SUMF at ¶¶ 11-12). He displayed a large posterboard of a donkey and proceeded to make irrelevant and harassing remarks and personal attacks on the Mayor and Kirkwood. (SUMF at ¶¶ 14-15). The Mayor asked Plaintiff if he had any specific questions for the applicant (SUMF at ¶ 16). Plaintiff then asked the representative of Bopp Chapel if he was planning on using asphalt paving equipment and warned the applicant to be careful because of the plantation mentality of Kirkwood. (SUMF at ¶ 17).

The second Public Hearing held on May 18, 2006, related to the expansion of St. Agnes Home, and Plaintiff spoke again. He refused to pose any questions or comments to the applicant or regarding the subject matter of the Public Hearing. (SUMF at ¶¶ 19-29). Rather, he stated that Kirkwood had a plantation-like mentality, that Kirkwood's government is corrupt and that the council and Mayor have jack-ass like qualities. (SUMF at ¶ 20). Plaintiff asked for a "negro version" of the guidelines and told the Mayor that he was "sitting there looking stupid". (SUMF at ¶¶ 21-22). Plaintiff was asked by the Mayor if he had any specific questions for the applicant, St. Agnes Home. (SUMF at ¶ 23). Plaintiff ignored the Mayor and continued to repeat his comments

4

about Kirkwood's jackass-like qualities. (SUMF at ¶ 24). The Mayor asked several times whether Plaintiff had any specific questions for the applicant. (SUMF at ¶ 25). Each time the Mayor posed this question to Plaintiff, Plaintiff would refuse to pose a question to the applicant and, instead, repeated his opinions about a plantation mentality and jackasses. (SUMF at ¶ 26). The Mayor motioned Kirkwood Police Officer Thomas Ballman ("Officer Ballman") to step forward and requested that Plaintiff take a seat. (SUMF at ¶ 30). Officer Ballman approached Plaintiff to request him to leave, but did not arrest Plaintiff at this point. (SUMF at ¶ 31). Plaintiff took a seat on the floor and refused to comply with Officer Ballman's request that he leave the podium. (SUMF at ¶ 32). At this point, when Plaintiff took a seat on the floor, Officer Ballman made the decision to arrest Plaintiff and Plaintiff was arrested for disorderly conduct. (SUMF at ¶ 33).

On June 15, 2006, Plaintiff was again in attendance at the Kirkwood city council meeting. (SUMF at ¶ 37). He was recognized and allowed to speak during the Public Comment portion of the meeting. (SUMF at ¶ 38). Plaintiff began his remarks by stating only, "jackass, jackass, jackass . . . ." (SUMF at ¶ 39). Plaintiff also called the Mayor a jackass and claimed Kirkwood has a plantation-like mentality. (SUMF at ¶¶ 40-41). Plaintiff was warned to refrain from using such language and to make his comments or questions without being disruptive. (SUMF at ¶ 42). Plaintiff responded by saying that the corrupt city council offends him and he continued with his comments. (SUMF at ¶¶ 43-44). Council member Connie Karr made an objection to Plaintiff's use of the language. (SUMF at ¶ 45). The Mayor again reminded Plaintiff to use appropriate language and Plaintiff refused to comply with the Mayor's request. (SUMF at ¶¶ 46-49). Plaintiff's behavior was disruptive, unduly repetitive and irrelevant to City business. (SUMF at ¶¶ 47-49). The Mayor motioned for a Kirkwood Police Officer to intervene. (SUMF at ¶ 50). Officer Ballman approached Plaintiff and repeatedly asked him to take a seat. (SUMF at ¶¶ 50-51). Plaintiff

continued speaking and sat on the floor, further disrupting the meeting. (SUMF at ¶ 51). Plaintiff was charged with disorderly conduct as a result of his conduct at this meeting. (SUMF at ¶ 52).

Plaintiff was convicted of both disorderly conduct charges in Kirkwood Municipal Court. (SUMF at ¶¶ 34, 53). After an appeal to St. Louis County Associate Circuit Court, Plaintiff was once again convicted on both charges. (SUMF at ¶¶ 35, 54). Plaintiff has appealed these convictions to the Missouri Court of Appeals, where the cases are currently pending. City of Kirkwood v. Thornton, Cause No. ED89560 (Mo. App. E.D. 2006).

## IV. DISCUSSION

In determining whether to grant injunctive relief, this Court should consider: (1) the threat of irreparable harm; (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties/litigants; (3) the probability of success on the merits; and (4) the public interest. See IBEW, Local No. 1 v. St. Louis County, 117 F. Supp. 2d 922, 928 (E.D. Mo. 2000). Further, this Court should consider the following factors in determining whether to grant permanent injunctive relief: (1) whether the plaintiff has proven all of the elements of the underlying claim; (2) whether there is a threat of irreparable harm; and (3) whether there is an adequate remedy at law. See 35 Mo. Prac. Series at § 24.2 (2007 ed.).

A plaintiff seeking to establish a claim under 42 U.S.C. § 1983 (sometimes referred to s "Section 1983") must demonstrate a violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law. See 42 U.S.C. 1983; see also, West v. Atkins, 487 U.S. 42, 48 (1988). Here, Plaintiff's Section 1983 claim for the alleged violations of his First Amendment rights and request for injunctive relief must fail because the actions of Defendant do not rise to the level of a constitutional violation. Further, Plaintiff's claim fails because it is barred by the doctrine of *res judicata* and because it is moot.

6

A.  The City Did Not Violate Plaintiff's Constitutional Right By Imposing Reasonable Limits On The Time, Place and Manner of Speech.

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech ..." U.S. Constitution, Amendment I. However, it is well established that the "First Amendment does not guarantee persons the right to communicate their views at all times or in any manner that may be desired." Heffron v. Int'l Soc'y for Krishna Consciousness, 452 U.S. 640, 647 (1981). A violation of First Amendment rights occurs only when speech is constitutionally protected and when the government's justification for the restriction is insufficient. See Frisby v. Schultz, 487 U.S. 474, 479 (1988). In keeping with these principles, and as discussed more thoroughly below, courts have established that a city may enforce reasonable regulations of the "time, place and manner" of expression. Airport Comm'rs. of Los Angeles v. Jews for Jesus, 482 U.S. 569, 573, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987); see also Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir. 1989) (finding a significant government interest in controlling the agenda and preventing the disruption of public meetings).

The Supreme Court has designated a three-part, forum-based test for determining whether a state actor violated a plaintiff's First Amendment right to free speech with respect to speech and conduct in a public forum. See Cornelius v. NAACP Legal Defense and Education Fund, Inc., 473 U.S. 788, 802 (1985). The Court must determine (1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard. Id.

The First Amendment's protection of free speech, made applicable to the states through the Fourteenth Amendment, extends to a broad range of speech and expressive conduct. See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557 (1995). Since Kirkwood has a policy of allowing citizens to speak at its public council meetings, Plaintiff has a First

Amendment right to speak, but his right to speak is not absolute. The Supreme Court has recognized the significance of the government's interest in conducting orderly, efficient meetings of public bodies. Jones, 888 F.2d 1328. Therefore, Plaintiff's speech can be regulated.

In analyzing the nature of the forum, the Supreme Court has recognized that three types of fora exist: traditional public fora, designated public fora, and nonpublic fora. The extent to which government may regulate expressive activity on public property depends upon the character of the public property in questions.[2] See Perry Education Association v. Perry Local Educator's Association, 460 U.S. 37, 44 (1983).

With respect to the designated or limited public fora, the Court has declared that the government may create a "limited public forum" out of an otherwise nonpublic forum "by intentionally opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802. City council meetings, such as the meetings at issue here, are a "limited public forum." See Pesek v. City of Brunswick, 794 F. Supp 768, 782 (N.D. Ohio 1992); Gault v. City of Battle Creek, 73 F. Supp. 2d 811, 814 (W.D. Mich. 1999); White v. City of Norwalk, 900 F. 2d 1421, 1425 (9th Cir. 1990).

As a limited public forum, reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest. See Gault, 73 F. Supp. 2d at 814, quoting Perry, 460 U.S. at 46. In other words, while time, place

---

[2] Traditional fora are places like streets and parks "that by long tradition or by government fiat [have] been devoted to assembly and debate." Arkansas Educational Television Commission v. Forbes, 523 U.S. 666, 677 (1998). Regulation of speech in a traditional forum is examined under strict scrutiny. United States v. Kokinda, 497 U.S. 720, 726 (1990). Designated public fora are those that the government opens "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Cornelius, 473 U.S. at 802. Regulation of speech in this type of forum is also examined under strict scrutiny. Kokinda, 497 U.S. at 726. Finally, the nonpublic forum is public property which the government has not opened to public communication either by tradition or by designation. Perry, 460 U.S. at 46. Regulation of speech in this type of forum is examined only for reasonableness. Kokinda, 497 U.S. at 726.

and manner restrictions need only be reasonable, content-based restrictions on private speech must survive strict scrutiny. See, e.g., International Society for the Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992); Perry, 460 U.S. at 45-46. However, when a restriction on speech is "aimed not at the content" of the speech but at the "secondary effects" generated by or associated with the speech, the restriction is considered to be content-neutral. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986). As long as a restriction "serves the purposes unrelated to the content of expression," it is content-neutral, "even if it has an incidental effect upon some speakers or messages but not others." Ward v. rock Against Racism, 491 U.S. 781, 791 (1989).

Kirkwood's restrictions with respect to comments during its public meetings are content-neutral. As noted, the courts acknowledge that the government has a significant interest in the orderly and efficient conduct of its business at such meetings. See Grayned v. City of Rockford, 408 U.S. 104, 119 (1972); Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989). A city meeting "has an agenda to be addressed and dealt with" and, therefore, courts must give consideration to that business function when analyzing claims. White, 900 F.2d at 1425. The nature of a city council meeting means that a speaker can become "disruptive" in ways that would not constitute a breach of the peace or "fighting words." White, 900 F.2d at 1425. "A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies." Id. at 1426. When such speech becomes "disruptive" is not mathematically determinable. The role of the moderator at a council meeting involves a great deal of discretion. Id. However, when speakers are subject to restriction only when their speech "disrupts, disturbs or otherwise impedes the orderly conduct of the council meeting," the restriction is constitutionally valid. Id.

In White v. City of Norwalk, 900 F.2d 1421 (9th Cir. 1990), the plaintiff challenged the city council ordinance/rule of decorum at a city council meeting as violating the First Amendment. Looking to the provision in the ordinance/rule, the Court of Appeals adopted the narrower

construction of the rule that uttering "personal, impertinent, slanderous or profane" remarks results in discipline only when the remarks disrupt, disturb or impede the orderly conduct of the council meeting. Id. at 1424. The court stated that because of the forum, a city council meeting, "the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact." Id. at 1425.

In a different context, in Cogswell v. City of Seattle, 347 F.3d 809 (9th Cir. 2003), the Ninth Circuit Court of Appeals reversed the trial court's ruling that a restriction in a city ordinance that prohibited references to political opponents in candidate statements violated the First Amendment. The ordinance allowed candidates to state their positions and qualifications in the candidate statement in the voters' pamphlets. However, it prohibited discussing an opponent. Id. at 812. Finding that the ordinance for the pamphlet created a limited public forum, the court determined that the restriction was constitutionally acceptable. "Candidate criticism of an opponent is not included within the subject matter of Seattle's forum is not a free-for-all discussion of every candidate's qualifications, or an opportunity for candidates to engage in mudslinging." Id. at 816. Since the plaintiff's candidate statement addressed a subject outside the limited forum, it was properly excluded. Id.

In Scroggins v. City of Topeka, Kansas, 2 F. Supp. 2d 1362 (D. Kan. 1998), the trial court determined that the plaintiff's First Amendment and Fourteenth Amendment Equal Protection rights were not violated when the Mayor, presiding over a city council meeting, ended on plaintiff's comments and refused to allow the other plaintiffs to make any remarks. The plaintiffs were all members of the same family. The topic of the remarks of all of the plaintiffs, which had been designated prior to the meeting, were critical of an individual the Mayor had appointed to a public commission. The comments by the plaintiffs indicated the appointee forged checks and opened others' mail, and contained other highly personal information. Id. at 1365-1367. One plaintiff was

stopped during his comments and the other plaintiffs, his family members, were precluded from speaking based upon the city council rule forbidding personal attacks. Id. at 1372-1375. The court found that the council's rule prohibiting rude or slanderous remarks was content-neutral and targeted the secondary effects of such speech and not the expressive content.³ Id. at 1372. The court analyzed all the requirements related to a limited public forum, such as a city council meeting, and found that plaintiff's First Amendment rights were not violated. Id. at 1372-1375.

1. The May 18, 2006 Council Meeting.

Kirkwood's written guidelines and rules of decorum explicitly provide that any person may speak during the question and comment portion of the Public Hearing so long as the questions and comments are directed to the subject matter of the Public Hearing. (SUMF at ¶ 6). Plaintiff has been a regular attendee of Kirkwood City Council and is familiar with Kirkwood's guidelines. (SUMF at ¶¶ 2-4, 59).

As discussed in more detail above, at the May 18, 2006 Kirkwood City Council meeting, Plaintiff rose to speak during the question and comment period during the Public Hearing, but refused to limit his questions or comments to the subject matter of the hearing despite repeated warnings to do so. (SUMF at ¶¶ 13, 19-29). Significantly, Plaintiff admits that he had no desire to speak about the subject of the Public Hearing and instead came to the meeting "because of the City's constant harassment, bogus tickets, document fraud and perjury, the reason I was at those

---

³ Plaintiff routinely and repeatedly accuses Ken Yost, Kirkwood's Director of Public Works, of being a liar. He has also accused Michael Swoboda, Kirkwood's Mayor, of being a liar and of engaging in a plantation mentality. Following the filing of this lawsuit, Plaintiff begun "picketing" outside of the offices of Lewis, Rice & Fingersh, the personal residence of John Hessel, the St. Louis County Courthouse, the streets of downtown Kirkwood and Kirkwood Council meetings, carrying placards reading:

> (i) The City of Kirkwood's Mayor is a "Liar", (ii) Lewis, Rice & Fingersh Attorney John Hessel is a "Liar", (iii) Two Liars Makes One "Cover-up", (iv) If You Need a Lying Attorney !!! Please Call Lewis, Rice & Fingersh, LC, Ask for "John Hessel", (v) Lying to a Federal Judge – No Problem !!! Call Lewis, Rice & Fingersh, LC, Ask for "John Hessel". (SUMF at ¶ 57).

11

meetings was to discuss with them on those statements." (SUMF at ¶ 13). When Plaintiff refused to follow the guidelines, his behavior became disruptive to the meeting and served only to disturb and impede the orderly conduct of the council meeting. (SUMF at ¶¶ 27-29).

Kirkwood's guideline in limiting questions and comments to matters germane to the Public Hearing is a content-neutral restriction and is a permissible and reasonable restriction on the time, place and manner of speech. It is simply to promote the orderly and efficient conduct of the meetings by allowing the city council and members of the public to focus on the subject of the Public Hearing. See White, 900 F.2d at 1425; Grayned, 408 U.S. at 119. The council and public, who are at the meeting for the genuine purpose of the Public Hearing, as opposed to Plaintiff's admitted purpose of harassment, have a right to conduct their business without disturbance. Under these circumstances, Defendant's behavior does not rise to the level of a violation of Plaintiff's First Amendment rights and Defendant is entitled to judgment as a matter of law.

2. The June 15, 2006 Council Meeting.

At each city council meeting any citizen desiring to speak on any subject matter relevant to City business may speak. (SUMF at ¶¶ 5, 7). Once recognized by the Mayor, any person in attendance is allowed three minutes to speak during the Public Comment portion of the meeting. (SUMF at ¶ 7). The written guidelines and rules of decorum specify that citizens "must be respectful" and are prohibited from using "foul, abusive or inappropriate language, displays or other materials" while speaking during any portion of the meeting. (SUMF at ¶ 8). The guidelines further warn that a citizen will not be allowed to continue to speak and will be ordered to leave the podium and take his or her seat if the citizen fails to follow these guidelines. (SUMF at ¶ 9). A city is permitted to restrict disruptive speech where one's language is unduly repetitious or contains extended discussion of irrelevancies, and the Courts will construe the City's guidelines narrowly to avoid unconstitutional interpretations. White, 900 F.2d at 1426.

At the June 15, 2006 City Council meeting, during the Public Comment portion of the meeting, Plaintiff began his remarks by repeatedly stating, "Jackass, jackass, jackass . . . ." (SUMF at ¶ 39). The Plaintiff abusively and disruptively referred to the Mayor as a "jackass" and remarked on Kirkwood plantation-like mentality. (SUMF at ¶¶ 40-41). Plaintiff did not offer any relevant comments and continued on his tirade. (SUMF at ¶¶ 39-47). Council member Connie Karr made an objection to Plaintiff's use of such language and behavior, and the Mayor did not believe Plaintiff was conducting himself appropriately in terms of his discussion or presentation. (SUMF at ¶¶ 45-49). He was impeding and otherwise disrupting the meeting. (SUMF at ¶¶ 47, 49).

This case is similar to <u>White</u> and <u>Scroggins</u>, discussed above. Moreover, in this case Plaintiff intentionally rose with the intent to disrupt, disturb and impede the orderly conduct of the meeting. Kirkwood has a right and obligation to members in the audience to conduct its Council meetings in an efficient and orderly manner. The restrictions placed on Plaintiff's speech were content-neutral and targeted the secondary effects of Plaintiff's speech and not the expressive content. See <u>Scroggins</u>, 2 F.Supp. 2d at 1372-1375. Plaintiff's speech was not only offensive in its content (i.e. repeatedly saying, "jackass, jackass, jackass. . . "), but was also unduly repetitious and irrelevant to the business of the meeting and, therefore, disruptive. <u>White</u>, 900 F.2d at 1426. The Mayor is afforded discretion in enforcing these guidelines under the circumstances and was operating within reason. <u>Id</u>. Plaintiff's First Amendment rights have not been violated. Defendant is entitled to regulate disruptive, abusive behavior.

**B.   Plaintiff Was Convicted of Two Counts of Peace Disturbance And His Claims Are, Therefore, Barred.**

As part of his request for relief, Plaintiff also requests that the City be refrained from "handcuffing, arresting" Plaintiff. (Complaint at p. 5, ¶ 1 of WHEREFORE clause). On May 18 and June 15, Plaintiff was arrested and charged with disorderly conduct. (SUMF at ¶¶ 33-36, 52-55). A trial was held in the Kirkwood Municipal Court, and Plaintiff was found guilty of both

charges on September 26, 2006. (Id.). Plaintiff appealed both of those convictions in the Circuit Court of St. Louis County, pursuant to Rule 37.01 of the Missouri Supreme Court Rules. (Id.). By order of the Honorable Ellen Siwak, Plaintiff was again found guilty of disorderly conduct on both charges. (Id.). In that case, Plaintiff brought up these same issues. (SUMF at ¶ 56).

By requesting that this Court prohibit Defendant from "handcuffing, arresting" him, Plaintiff is asking this Court to address issues that were already litigated by Kirkwood municipal court and St. Louis County Circuit Court. Plaintiff is now barred from relitigating those matters and Defendant is entitled to Judgment as a matter of law. See, e.g. In Re Laspy, 409 S.W.2d 725, 736 (Mo. App. W.D. 1966) (criminal conviction of homicide accepted as conclusive evidence of murder in civil suit by application of *res judicata*); Kennedy v. Missouri, 920 S.W.2d 619, 621 ("A person who has suffered criminal conviction is bound to raise all challenges thereto timely and in accordance with the procedures established without purpose. To allow otherwise would result in a chaos of review unlimited in time, scope, and expense.").

### C. This Case Is Moot and Plaintiff is not Entitled to the Injunctive Relief Requested Because He Still Speaks At These Meetings.

Plaintiff's only request for relief in this case is injunctive, and it is believed that he is simply requesting that this Court enter an Order allowing him to continue to speak at city council meetings. (See Complaint). Plaintiff has not suffered any irreparable harm and his claim for injunctive relief is improper and moot because Defendant continues to allow Plaintiff to attend and speak at its meetings. (SUMF at ¶ 59; see also City of Manchester v. Ryan, 180 S.W.3d 19, 21 (Mo. App. E.D. 2005) ("it is well-settled law in Missouri that courts do not determine moot cases"); Gebru v. St. Louis County, 136 S.W.3d 89, 92-93 (Mo. App. E.D. 2004) (dismissing case as moot where there was no "actual and vital controversy" and the relief the appellant sought was impossible for the court to order); Leuellyn v. Director of Revenue, 782 S.W.2d 724, 725 (Mo. App. W.D. 1989) (granting Director's motion for summary judgment where the controversy was moot after the

driver's license had already been reinstated). Plaintiff has not been barred from attending meetings[4] and Plaintiff has not been stopped from speaking, except on the two instances in which Plaintiff was disruptive.

V. **CONCLUSION**

Defendant City of Kirkwood respectfully requests that this Court grant its Motion for Summary Judgment and grant such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ John M. Hessel
John M. Hessel, #3390
Jami L. Boyles, #19903
500 N. Broadway, Suite 2000
St. Louis, MO 63102-2147
(314) 444-7600 (Telephone)
(314) 241-6420 (Facsimile)
E-mail: jhessel@lewisrice.com

Attorneys for Defendant City of Kirkwood

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served, via U.S. Mail, first class postage prepaid, to *pro se* Plaintiff **Charles L. Thornton** at 351 Attucks Street, Kirkwood, MO 63122, on this 12th day of October, 2007.

/s/ John M. Hessel

---

[4] As a result of Plaintiff's behavior outside of the offices of Lewis, Rice & Fingersh and at the personal residence of John M. Hessel, a Protective Order was issued prohibiting Plaintiff from coming within 1000 feet of Hessel's home or office. (SUMF at ¶ 58). However, this Protective Order does not ban Plaintiff from attending City Council meetings. (Id.).