UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES THORNTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07CV79 CDP |
| | ) |
| CITY OF KIRKWOOD, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**

Charles Thornton is a regular and vocal attendee at council meetings for the City of Kirkwood. He was arrested while speaking at two of those meetings and was then convicted of disorderly conduct for his behavior during the meetings. These events form the basis of Thornton's pro se complaint for injunctive relief.

Thornton seeks an injunction preventing Kirkwood from stopping him from speaking during city council meetings. Kirkwood now moves for judgment as a matter of law, contending that it did not violate Thornton's first amendment rights by imposing and enforcing reasonable limits on the time, place and manner of speech at city council meetings. Kirkwood also claims that Thornton's request for injunctive relief is moot because he has continued to speak at city council meetings both before and after the filing of this complaint. Finally, Kirkwood asserts that Thornton's claims are barred by the doctrine of res judicata because he

has already been convicted of disorderly conduct for the actions about which he now complains. Thornton opposes summary judgment. Because Kirkwood did not violate Thornton's first amendment rights as a matter of law, Kirkwood is entitled to summary judgment. My analysis follows.

## Standard of Review Governing Summary Judgment

A court may grant a motion for summary judgment only if it finds that all the evidence before it demonstrates "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden is on the moving party. Id. The court must view all facts and resolve all ambiguities in favor of the non-moving party. Id. However, the non-moving party must set forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in that party's favor. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). Under these standards I review the facts in this case.

## Undisputed Facts

### Kirkwood's Guidelines and Rules of Decorum

Kirkwood has written guidelines and rules of decorum that citizens must follow when attending and speaking at its city council meetings. Thornton is familiar with these rules, which are made available to the public during the

meetings. Citizens are allowed to rise and speak during two designated portions of Kirkwood's meetings: the comment period of any public hearing; and, the public comment portion of the city council meetings. During the comment period of a public hearing, citizens may "speak in favor or against the issue" or "ask a question" about the subject of the hearing. During the public comment portion of the city council meeting, citizens are allowed to speak on any relevant subject and may ask questions, but council members are not required to respond. The guidelines require citizens to "be respectful" and prohibit "foul, abusive or inappropriate language, displays or other materials" while speaking. Finally, the guidelines warn that a citizen will not be allowed to continue to speak and will be ordered to leave the podium if he or she does not follow these rules.

### The May 18, 2006 City Council Meeting

On May 18, 2006, Kirkwood's city council held two public hearings relating to the expansion of two businesses, a funeral home and a senior living facility. During the comment period following the funeral home's presentation, citizens were given the chance to speak about the issue. Thornton was given permission to speak. Thornton admits that he asked to speak at this hearing (and at the other city council meeting) because he wanted to discuss the perceived

harassment of him by Kirkwood[1], not because he wanted to address issues germane to the proceedings. When Thornton approached the podium, he displayed a large posterboard with a picture of a donkey and began making harassing remarks about the Mayor of Kirkwood. When the mayor asked Thornton if he had any specific questions for the funeral home, Thornton asked a representative of the funeral home if he intended to use asphalt paving equipment for the expansion and then warned the applicant to "be careful" because Kirkwood had a "plantation mentality" that could result in fines and arrest. Thornton was allowed to speak and was not asked to sit down.

Following the senior living center's presentation, Thornton was again given permission to speak during the comment period of the public hearing. Thornton stated that Kirkwood had a "plantation-like mentality," that Kirkwood's government is corrupt, and that the city council members and the mayor have jackass-like qualities. Thornton then asked for a "negro version" of the reasonable time, place, and manner restrictions for the city council meetings. Thornton also told the Mayor that he was "sitting there looking stupid." The Mayor asked Thornton several times whether he had any specific questions for the senior living

---

[1] For example, Thornton believes that Kirkwood has issued him bogus tickets and engaged in document fraud and perjury. He has also accused defense counsel of conspiring with Kirkwood and has picketed counsel's office and home.

center, but Thornton ignored the Mayor and continued to repeat his comments about Kirkwood's jackass-like qualities and its "plantation mentality." Because Thornton's behavior was disruptive and did not comply with the city council's guidelines, the mayor motioned for a Kirkwood police officer to step forward and asked Thornton to take a seat. When the police officer approached him, Thornton sat down on the floor and refused to leave the podium. Thornton was then arrested by the police officer and subsequently convicted of disorderly conduct in municipal court. On appeal to the St. Louis County Associate Circuit Court, Thornton was again convicted of disorderly conduct. He appealed his conviction to the Missouri Court of Appeals, where the case is currently pending.

<u>The June 15, 2006 City Council Meeting</u>

Thornton also attended the June 15, 2006 city council meeting and was granted permission to speak during the public comment portion of the meeting. He began his remarks by stating, "Jackass, jackass, jackass . . . ." Thornton also called the Mayor a jackass and stated that Kirkwood had a "plantation-like mentality." When the Mayor asked Thornton to refrain from such language and to continue his remarks without such disruptive and offensive language, Thornton responded that the corrupt city council offended him and continued his remarks. The Mayor eventually told Thornton that he would have to sit down if he could

not refrain from the use of such language and either ask questions or make comments relevant to Kirkwood. One of the council members made an objection to Thornton's language because it offended her, and the mayor again asked Thornton to refrain from the use of such language or to sit down. Thornton again refused and became disruptive, so the mayor motioned for a Kirkwood police officer to intervene. When the police officer asked Thornton to take a seat, Thornton refused to stop talking and sat down on the floor by the podium, further disrupting the city council meeting. Thornton was charged with disorderly conduct as a result of his behavior and was later convicted in Kirkwood municipal court. After an appeal to St. Louis County Associate Circuit Court, Thornton was again convicted of disorderly conduct. He appealed his conviction to the Missouri Court of Appeals, where the case is currently pending.

Since the June 15, 2006 meeting, Thornton has attended Kirkwood's city council meetings and has not been denied the opportunity to speak.

## **Discussion**

Thornton alleges that Kirkwood violated his first amendment right to free speech and seeks injunctive relief under 42 U.S.C. § 1983. The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." Kirkwood does not dispute that Thornton

has a first amendment right to speak at its city council meetings. However, "the First Amendment does not guarantee persons the right to communicate their views at all times or in any manner that may be desired," Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 647 (1981), nor does it "guarantee access to property simply because it is owned or controlled by the government." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983). "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." Id. at 44.

The United States Supreme Court uses a forum analysis for evaluating restrictions of speech on government property. See id. at 45-46. "The forum analysis initially requires a court to determine whether a property is a traditional public forum, a designated public forum, or a nonpublic forum." Bowman v. White, 444 F.3d 967, 974 (8th Cir. 2006). Once a court makes a determination on the nature of the forum, it then applies the appropriate standard of scrutiny to decide whether a restriction on speech passes constitutional muster. See, e.g., Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677-683 (1998); United States v. Kokinda, 497 U.S. 720, 726-27 (1990). Thus, the extent to which speech upon government property may be limited depends upon the nature of the forum in

which the speech takes place. Burnham v. Ianni, 119 F.3d 668, 675 (8th Cir. 1997).

Here, Kirkwood contends that its city council meetings should be considered a limited public forum. A designated public forum is a nonpublic forum the government intentionally opens to expressive activity for a limited purpose such as use by certain groups or use for discussion of certain subjects. Perry, 460 U.S. at 46. "The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." Forbes, 523 U.S. at 677 (internal quotations omitted) (alteration in original). The Eighth Circuit Court of Appeals has noted that "substantial confusion exists regarding what distinction, if any, exists between a 'designated public forum' and a 'limited public forum.'" Bowman, 444 F.3d at 975. It summarizes the distinction as follows:

> As the First Circuit pointed out in a footnote in Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 76 n. 4 (1st Cir. 2004), "The phrase 'limited public forum' has been used in different ways." The First Circuit accurately states that the phrase has been used as a synonym for the term "designated public forum" and also for the phrase "nonpublic forum." Id. The Second Circuit has articulated the view that the phrases "designated public forum" and "limited public forum" are not synonyms. See, e.g., N.Y. Magazine v. Metro. Transp. Auth., 136 F.3d 123, 128 n. 2 (2nd Cir. 1998) (describing a limited

public forum as a "sub-category of the designated public forum, where the government 'opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects.' " (quoting Travis v. Owego-Apalachin Sch. Dist., 927 F.2d 688, 692 (2nd Cir. 1991))); see also Chiu v. Plano Independent Sch. Dist., 260 F.3d 330, 346 n. 12 (5th Cir. 2001). A designated public forum can be classified as either "of a limited or unlimited character." Van Bergen v. Minnesota, 59 F.3d 1541, 1553 n. 8 (8th Cir. 1995). Under this analysis, a "limited public forum is a subset of the designated public forum [that] arises ' "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." ' " Make the Road By Walking, Inc. v. Turner, 378 F.3d 133, 143 (2nd Cir. 2004) (quoting Hotel Employees & Rest. Employees Union Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 545 (2nd Cir. 2002)) (quoting N.Y. Magazine v. Metro. Transp. Auth., 136 F.3d 123, 128 n. 2 (2nd Cir. 1998)). For example, a university concert hall might be considered a "limited public forum," designated for particular speech by university-supported musicians. An "unlimited" designated public forum is a forum designated for expressive conduct by the government but not limited to a particular type of speech or speaker.

Bowman, 444 F.3d at 975-76.

"The distinction between a limited designated public forum and an unlimited designated public forum is significant because it controls the level of scrutiny given to restrictions on speech." Id. at 976. "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving its forum for certain groups or for the discussion of certain topics." Good News Club v.

Milford Central Sch., 533 U.S. 98, 106 (2001) (internal citations and quotation marks omitted). In a limited designated public forum, "[r]estrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral." Bowman, 444 F.3d at 976; see also Milford, 533 U.S. at 106-07 ("The restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum.") (internal citations and quotation marks omitted). I agree that the public comment portion of Kirkwood's city council meetings and public hearings should be considered a limited designated public forum. See Eichenlaub v. Township of Indiana, 385 F.3d 274, 281 (3rd Cir. 2004) (citizen's forum portion of township's board of supervisors meeting considered limited designated public forum); White v. City of Norwalk, 900 F.2d 1421, 1425 (9th Cir. 1990) (city council meeting where citizens afforded opportunity to address council regarded as limited public forum); Jones v. Heyman, 888 F.2d 1328, 1332 (11th Cir. 1989) (city commission meeting is forum where speech may be restricted "to specified subject matter.").

Thornton's first amendment rights were not violated as a matter of law when, on May 18, 2006, he was asked to sit down after he repeatedly refused to speak about the subject matter of the public hearing and was later arrested when he

sat on the floor by the podium and refused to move. As the meeting was a limited designated public forum, Kirkwood had the right to restrict the topic of discussion to the expansion of two local businesses. See, e.g. Milford, 533 U.S. at 106-07. Notably, the first time Thornton spoke he was not asked to sit down (despite his harassing remarks and disruptive behavior) because he eventually asked a question that was relevant to the expansion of the funeral home. When Thornton spoke the second time, however, he refused to direct any of his remarks or questions to the subject of the proposed expansion of the senior center. Instead, Thornton engaged in personal attacks against the mayor, Kirkwood, and the city council. After repeatedly refusing to confine his remarks to issues germane to the senior center, Thornton was finally asked to sit down. Only after he failed to comply and continued his disruptive speech and behavior by sitting down on the floor was he arrested.

Any restrictions on Thornton's speech were reasonable, viewpoint neutral, and served important governmental interests. "Plainly, public bodies may confine their meetings to specified subject matter." Eichenlaub, 385 F.3d at 281 (quoting, City of Madison Joint Sch. Dist.No. 8 v. Wis. Employment Relations Comm'n, 429 U.S. 167, 175 n.8 (1976)). "There is a significant governmental interest in conducting orderly, efficient meetings of public bodies." Rowe v. City of Cocoa,

Fla., 358 F.3d 800, 803 (11th Cir. 2004). "A speaker may disrupt a [city] Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies." White, 900 F.2d at 1425. "To deny the presiding officer the authority to regulate irrelevant debate and disruptive behavior at a public meeting . . . would cause such meetings to drag on interminably, and deny others the opportunity to voice their opinions." Jones, 888 F.2d at 1333; see also, Wright v. Anthony, 733 F.2d 575, 577 (8th Cir. 1984) (time limitations on a citizen's right to speak at meetings such as Kirkwood's city council meetings serve significant governmental interests in conserving time and in ensuring that other citizens have an opportunity to speak and are not unreasonable). Because Thornton does not have a first amendment right to engage in irrelevant debate and to voice repetitive, personal, virulent attacks against Kirkwood and its city officials during the comment portion of a city council public hearing, his claim fails as a matter of law.

This same analysis applies to Thornton's remarks at the June 15, 2006 city council meeting. During the public comment portion of the city council meeting, Thornton was allowed "to speak on any relevant subject" and to pose questions to the council members. The guidelines also prohibit "foul, abusive or inappropriate language, displays or other materials" and require citizens to "be respectful" while

speaking. When he was granted permission to speak, Thornton did not comply with these rules. Instead, he began his remarks with "jackass, jackass, jackass . . ." and reiterated his comments about the "plantation-like mentality" of Kirkwood. Thornton's comments were irrelevant and repetitive, and his truculent attitude was disruptive to the city council meeting. As such, the restraint on his speech was constitutional. "Restricting such behavior is the sort of time, place and manner regulation that passes muster under the most stringent scrutiny for a public forum." Eichenlaub, 385 F.3d at 281. For this reason, Thornton's first amendment claim fails as a matter of law.

Because Kirkwood did not violate Thornton's rights to free speech under the First Amendment as a matter of law, I do not reach Kirkwood's alternative grounds for summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#35] is granted, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2008.